[Civ. No. 14045. Second Dist., Div. Three. Jan. 6, 1944]

ELSIE IDELL HENZGEN, Appellant, v. ARTHUR CONRAD HENZGEN, Respondent.

Barry Sullivan for Appellant.

Leonard S. Barnes for Respondent.

BISHOP, J. pro tem.—The plaintiff appeals from an order reducing from $120 to $60 the amount which the defendant is required to pay her each month. We find no merit in any of the arguments advanced by the plaintiff in support of her appeal.

An interlocutory decree was entered in this cause on November 19, 1940, followed, on November 28, 1941, by the entry of a final judgment of divorce which adopted by reference the provisions of the decree respecting alimony and those relating to the property of the parties. By these judgments plaintiff obtained a divorce from the defendant, and was awarded the custody of Arthur and Donna Lee, two of their minor children. Custody of the third minor child, Elsie Marie, was given to the defendant.

Following the paragraphs, in the decree, dealing with the custody of the children, this paragraph appears:

"It is further Ordered, Adjudged and Decreed that the defendant pay to the plaintiff the sum of $120 per month, and said $120 per month shall be paid in two installments of $60, first installment of $60 to be paid on the 1st day of November, 1940, and $60 on the 15th day of November, 1940, and $60 on each 1st and 15th day of each and every calendar month until the mortgage or deed of trust against said 88th Street property is fully paid; that when the payment of said mortgage or deed of trust against said property is paid in full, then in that event the said order is hereby reduced to the extent of and by the sum of $27.50 per month, to wit: $92.50 per month as alimony and for support of the said minor children of plaintiff and defendant; and subject to the further order of the court."

Section 139 of the Civil Code opens with this sentence: "Where a divorce is granted for an offense of the husband, the court may compel him to provide for the maintenance of the children of the marriage, and to make such suitable allowance to the wife for her support, during her life or for a shorter period as the court may deem just, having regard to the circumstances of the parties respectively; and the court may from time to time modify its orders in these respects."

It is now settled that if a husband and wife enter into a contract disposing of their property and include as an integral part of the agreement a provision that the husband shall pay the wife a sum fixed, monthly or otherwise, whether identified as alimony or unidentified, not only is she entitled

to be paid that sum because of the contract, but if the agreement is approved and by some suitable means made a part of a subsequent judgment of divorce, she is entitled to it by virtue of the judgment as well. ▇ In such event, notwithstanding the words of section 139 that ''the court may from time to time modify its orders in these respects'' it may not do so. See *Puckett* v. *Puckett* (1943), 21 Cal.2d 833 [136 P.2d 1], and cases cited. Plaintiff's hope of a reversal on this appeal is based on her contention that for either one or both of two reasons we should find the provision, which we quoted from the decree, to be an essential part of a judgment making a disposition of the property of the parties and so immune from judicial change. We are of the opinion that a decree should not be too readily interpreted as beyond the court's power to modify, and have concluded that the trial judge's determination, apparent from his action, that the decree before him was subject to modification, was fully justified.

We do not have the original complaint before us, but the record indicates that the case went to trial on such issues as were created by the stipulation that all the ''material facts'' of plaintiff's ''Amended and Supplemental Complaint for Divorce,'' should be deemed denied. This complaint, framed in four counts, one alleging extreme cruelty, concluded with a prayer that the defendant be required to pay a sum to the plaintiff ''temporarily and permanently for the support and alimony of plaintiff and the minor children of the parties''; that she be given all the community property; and then, after some other requests, concluded with the usual prayer ''for such other and further relief as may to the Court seem just and equitable.'' But she failed to pray specifically for a divorce. ▇ Relying upon the words of section 580, Code of Civil Procedure, that ''The relief granted to the plaintiff, if there be no answer, cannot exceed that which he shall have demanded in his complaint,'' the plaintiff now contends that because of her neglect specifically to pray for a divorce, the court had no jurisdiction to grant her one. Starting with this premise she proceeds to argue that the decree should be interpreted as a judgment relating merely to the property rights of the parties, and hence is a judgment which may not be modified. We find that this argument fails to convince because its first premise is faulty. Reading section 580 in the light of its purpose, we have no hesitation in concluding that the trial court was not without jurisdic-

tion to decree to the plaintiff the divorce for which she plainly complained and as plainly, albeit silently, prayed. (See *Horton* v. *Horton* (1941), 18 Cal.2d 579, 582 [116 P.2d 605], and *Parker* v. *Parker* (1928), 203 Cal. 787, 792 [266 P. 283].) Not having been attacked by appeal or otherwise directly the interlocutory decree and final judgment must be accepted as they are; that is, as judgments granting a divorce and, as one incident thereto, making a disposition of the property of the parties.

Arguing further in support of her main thesis, plaintiff contends that the provision that she receive $120 per month from the defendant was a term of a property settlement, approved by the court and made a part of its judgment, and even if it be a divorce judgment the part referring to the monthly payments is not subject to change. In expressing our approval of the trial court's implied disapproval of this contention we note, first of all, that there was never a settlement agreement between the parties determining their respective contractual rights and obligations and providing how their properties were to be held. The "settlement" in this case took the form, not of a contract executed by the parties either personally or by their attorneys-in-fact, but of a stipulation made and filed in the case by their attorneys at law. This fact is not determinative of the matter, but is persuasive as to the intent of the parties. The intent of the parties, and the intent of the court, we may gather from the stipulation and from the provisions of the decree. The stipulation is somewhat lengthy, dealing with several properties, and we shall note only a few of its provisions. After declaring that the "88th Street property" was owned by the parties as joint tenants, and that it was encumbered by a deed of trust executed by the defendant to secure a note, with an unspecified balance remaining unpaid, the stipulation contained these provisions: "VII. PARCEL J: It is the intention and agreement of the parties among other facts herein contained, and as the consideration hereof, they stipulate and agree as to the contents hereof and the division of the property, that the defendant pay in full the total unpaid amount owing on the deed of trust under the terms and conditions and provisions of the promissory note and deed of trust now on record in the Office of Los Angeles County Recorder and/or any substitution of the deed of trust in lieu thereof under the same provisions as aforesaid deed of trust to plaintiff,

as a matter of convenience for the purposes herein. By reference herein to said aforesaid deed of trust is meant to be the deed of trust on the 88th Street property.

"VIII. That the defendant pay plaintiff the sum of $120.00 per month, and said $120.00 shall be paid in two installments of $60.00, first installments of $60.00 to be paid on the 1st day of November, 1940, and $60.00 on the 15th day of November, 1940, and $60.00 on each and every 1st and 15th day of each calendar month until the mortgage or deed of trust against said 88th street property is fully paid; that when the payment of the said mortgage or deed of trust against said property is paid in full, then in that event the said order is hereby reduced to the extent of and by the sum of $27.50 per month, to wit: $92.50 per month, as alimony and for support of the said minor children of plaintiff and defendant; and subject to the further order of the court.

"IX. All payments, unless herein otherwise provided for shall be made payable through the Court Trustee.

"X. That in consideration of defendant paying to plaintiff the alimony and support for the minor children and the unpaid part of the note and deed of trust . . . [on the 88th Street property] the plaintiff has agreed to the contents hereof and to the amount of alimony and support to the two children and as to the division of property is in consideration of the defendant's undertaking and promises herein contained and no less."

In the introductory paragraph of the interlocutory decree we find this recital, among others: "that the plaintiff and defendant, by and through their respective counsel, have stipulated that the court may render its order, judgment and decree in as to the property of the parties hereto; alimony and support and custody of the minor children; attorney's fees and court costs; . . ." Later on in the decree we discover that "It is further Ordered, Adjudged and Decreed that the orders of the above entitled court in the above entitled cause heretofore rendered be and are hereby modified insofar as the alimony and support and custody of said plaintiff and defendant's minor children are concerned, and shall conform with the provisions of this decree. . . ."

■ At this point we find the statement and the sentiment expressed in *Puckett* v. *Puckett, supra* (1943), 21 Cal.2d 833, 841 [136 P.2d 1], quite pertinent: "The essential issue to be determined is whether or not the agreement was a property

settlement agreement, and the monthly payments ordered by the decree in effect and essence, a phase of the property settlement rather than merely alimony. It would be better practice to have that determination clearly and concisely made by the trial court when it renders the decree of divorce. Considerable confusion and uncertainty could be avoided in that fashion." The trial judge who was responsible for the interlocutory decree in this case, did not determine the meaning of, but slavishly followed, the ambiguous provisions of paragraph VIII of the "settlement" upon which plaintiff relies, and by reference adopted all other provisions of the stipulation, "so far as it may be consistent herewith," with the result that its confusion and uncertainty were reproduced in the decree. This placed the duty of interpreting the decree upon the trial judge who was asked to modify its terms.

█ It is clear, first of all, that the parties, speaking through their counsel, intended that the court should provide for alimony and child support in the decree it was to make, and the court in the decree it made meant to so provide. The only provision of the decree which can be construed as carrying out this mutual intent is the paragraph which we quoted, the one that corresponds to paragraph VIII of the stipulation. True, these paragraphs do not characterize the payment of $120 per month as "alimony," but this does not affect its character. (*Remondino* v. *Remondino* (1940), 41 Cal.App.2d 208, 215 [100 P.2d 437].)

█ Read literally, the decree might be said to require the defendant to pay the $120 per month in addition to the requirement of the stipulation, contained in the decree by reference, that he pay off the indebtedness secured by the trust deed. By this interpretation the whole sum (of $120) would be for alimony and child support. The fact, however, that the $120 per month was to be paid the plaintiff "until the mortgage or deed of trust . . . is fully paid," and that then the amount is to be reduced, not increased, leads to the inference that the "mortgage" was to be paid off by the defendant's payments to the plaintiff. If the whole $120 was to be applied on the encumbrance on the home place, then the defendant had already satisfied his obligation by the time the motion to modify the sum for alimony and child support was made. The interpretation to be given the uncertain provision which is most reasonable, because of the figure of $27.50 per month and because, in connection with the hearing

of the motion, it appeared to be the practical construction placed upon it by the parties themselves, is that $27.50 of the $120 was to enable the plaintiff to make the monthly payments due on the encumbrance, the balance was for the alimony and child support that the parties, and the court, wished to make provision for. █ The $27.50, then, would appear to be a part of the "property settlement" ordered by the court, and it is not subject to the further order of the court. The balance of the $120 is subject to a further order, however, because the provision of the judgment requiring that it be paid does not appear to be a vital part of the division of the property, with its attendant financial considerations, but appears rather to be an amount stipulated by the parties and accepted by the court as a proper sum to be paid for the support of the wife and children. The conclusion that the power given by section 139, Civil Code, was operative in this case, appears to us to be the proper conclusion to hold to.

█ On still another theory the order may be upheld. We have seen that the parties may, by a contract which becomes a part of a judicial decree, bind the court so that it is not free to change the order for alimony as changed conditions warrant. When it comes to making provision for the support of their children, however, a different result is reached. ". . . a decree of divorce providing for the custody and support of a minor child may be modified as circumstances require, even though it is based upon an agreement or stipulation of the parties. [Cases cited.]" (*Puckett* v. *Puckett, supra,* 21 Cal.2d 833, 839 [136 P.2d 1].) Plainly a part of the $120 monthly sum was to enable the plaintiff to support the two children placed in her custody; changed conditions authorized the court to change the amount to be paid her.

█ The first task of the judge who made the order from which the appeal was taken was to interpret the interlocutory decree to determine whether or not its paragraph respecting the payment of $120 per month was subject to modification. As the decree followed closely the wording of the stipulation, it was reasonable to interpret it as the parties to the stipulation must have meant it to be understood. █ Paragraph VIII of the stipulation and the corresponding paragraph of the decree each closed, as we have seen, with the words "and subject to the further order of the court." The stipulation, it is quite evident, was drafted by plaintiff's former counsel,

and its ambiguities and uncertainties should be resolved in the defendant's favor. But be this as it may, the more reasonable construction to place upon the stipulation is that the parties meant the provisions respecting the payment of $120 per month to be subject to modification. The amount of the encumbrance on the 88th Street property does not appear in the record, but we may accept the figure of $2,400 as a minimum, from the statements in the briefs of both parties. (*Wangenheim* v. *Garner* (1919), 42 Cal.App. 332, 336 [183 P. 670].) An indebtedness of $2,400 with interest as low as 5%, and it may have been more, payable at the rate of $27.50 per month, would run for some nine years. Before that period ran out at least one, possibly two, of the children for whose support a part of the $120 per month was intended, would become of age. Nine years is a long period to cover in advance, by a fixed agreement for alimony and child support, no matter what the changes in circumstances may be. The interpretation which we may infer was placed upon the decree by the trial judge whose order we are reviewing, that is, that the paragraph respecting the payment of $120 per month was expressly made "and subject to the further order of the court," we find not only a reasonable one but more reasonable than that for which the plaintiff contends.

At the hearing on the order to show cause it appeared that the plaintiff was earning over $120 per month, and that Elsie Marie, who was living with her mother, was earning more than $140 per month. The boy, Arthur, whose custody had been given to the plaintiff, was living with the defendant, and the court ordered a change in the custody order to conform to the fact. In the premises, there was proof of a change in conditions which warranted a change in the amount to be paid the plaintiff thereafter, until further order. (*Meek* v. *Meek* (1942), 51 Cal.App.2d 492, 494 [125 P.2d 117].)

The order appealed from is affirmed.

Shinn, Acting P. J., and Wood (Parker), J., concurred.