[Civ. No. 14405. Second Dist., Div. Three. Oct. 26, 1944.]

RUTH AVERY KOHL, Appellant, v. RUDOLF W. KOHL, Respondent.

George W. Seith for Appellant.

John N. Hurtt for Respondent.

FOX, J. pro tem.—Plaintiff and defendant, who were then husband and wife, entered into a property settlement agreement on June 4, 1941. In addition to providing that the wife should have custody of their two minor children and providing for their support, the parties also undertook to settle their

own property rights. The provisions in the agreement for the support of the children are not involved in this litigation and such provisions are therefore omitted from this opinion.

In its preliminary provisions the agreement recognizes that the parties were then living separate and apart. It goes on to declare that they "mutually desire to effect a property settlement agreement and to agree as to their respective rights, obligations and liabilities, if any, and as to the support and maintenance of the second party [wife] . . . and all rights of either in and to the property or estate of the other, or both, and so as to determine, designate and define their present and future liabilities and obligations to each other, and the rights of each with respect to all estate and property of either." The agreement then provides, "That in full settlement of and as . . . the final division of the property of the parties hereto, and in . . . full settlement of the rights of the second party [wife] in and to the property of the parties hereto and of the property of the first party [husband], and as and for the permanent support and alimony of the second party . . . and in full satisfaction, release and discharge by second party of first party of any and all claims . . . first party does hereby agree to pay to the second party for the uses and purposes hereinafter set forth, the following sums and to convey to her all of his right, title and interest" in a described parcel of real property and the furniture and furnishings there located. The provision for the payments reads as follows: " (a) First party shall pay to second party thirty (30%) per cent of all the monies, wages, and salaries earned by first party in each calendar month during the term hereof, beginning with the month of June, 1941; provided however, that in any and all events, first party shall pay second party the minimum sum of Forty-five ($45.00) Dollars per month during each such month. . . . The payments provided for by this sub-paragraph (a) shall continue until the second party shall either re-marry, or until her death, or until the second party shall become entirely self-supporting,—whichever event shall first occur."

In paragraph II of said agreement the second party (wife) agrees to convey to first party all her right, title and interest in a certain automobile and sailboat.

In paragraph III the second party (wife) releases the first

party of all obligations of support except as provided in said agreement. Also, provision is made in the most comprehensive language for the release of each of the parties of all rights or claims in the property or estate of the other by reason of their marital relation. Likewise, each waives any right to administer the estate of the other, or to contest the validity of the other's will.

In the fourth paragraph the second party (wife) covenants that she is "acquiring a separate estate" and agrees that "the covenants and agreements on the part of the first party are in full settlement of, and as the final division of the property rights of the parties hereto, whether separate or community, whether heretofore owned, or now owned, or hereafter to be acquired by either of the parties hereto in any manner, and whether the existence of the property be known to either of the parties hereto, or not, and in full settlement of the rights of the second party in and to the property of the parties hereto, and as and for the permanent support of said second party and in full payment of and as and for her costs and attorney's fees, and in full satisfaction and release and discharge" of all claims against first party.

It is provided in paragraph VII that in the event either party should thereafter apply for a divorce, the fact of the making of the property settlement agreement should be alleged in the complaint and the determination of its validity prayed for and that said agreement should be submitted to the court. It is also stated therein that the parties are not attempting to deprive the court of jurisdiction of or over or to withdraw from the consideration of the court the question of the property rights of the parties or the right of support on the part of the wife as against the husband, and that the husband is not seeking to nor requiring the wife to withdraw any such question from the determination of the court. It is further provided that, if the court should approve said agreement, it is to be made a part of the interlocutory decree.

It is then provided in paragraph VIII as follows: "This agreement shall be deemed to embrace all pecuniary and property demands and things whatsoever . . . which either party may now have or be deemed to have against the other, and said parties agree to give and accept the property heretofore described and make this settlement in full and complete satisfaction . . . of all claims . . . in favor of either of them against the other.

"The execution of this agreement shall be, and the same is intended to be a full, complete and final settlement of all the property rights of the parties hereto, and neither party hereto shall make or attempt to make any other or further claim of any kind upon the other, nor for any other or further property at any time other than the property received by the parties hereto, respectively, under the terms of this agreement."

On June 17, 1941, plaintiff filed an action against defendant for divorce on the ground of cruelty and alleged the making of the property settlement agreement and prayed for its approval by the court. Defendant defaulted. Thereafter, on July 16, 1941, plaintiff was awarded an interlocutory decree. The decree incorporated by reference the said agreement and approved it. The decree also followed in every detail the provisions of said agreement as to the adjustment of the property rights of the parties, the custody of the children and the arrangement for their support and maintenance. The provisions of the interlocutory decree were confirmed in the final judgment.

Pursuant to notice and supported by his own affidavit, defendant, on July 29, 1943, sought an order of the court "declaring fully satisfied" the interlocutory and final judgments "insofar as the same provided for defendant's support of plaintiff." The motion was based on that portion of the aforesaid agreement providing that defendant should pay plaintiff 30 per cent of his monthly earnings (with a minimum of $45 per month) "until the second party [wife] shall become entirely self-supporting." Defendant's theory was that by this provision of the said agreement the implied duty was placed on plaintiff to find a job and become self-supporting within a reasonable time after the execution of said agreement, that there was ample opportunity for her employment but that plaintiff was wilfully refusing to become self-supporting.

At the hearing on said motion the court made an order terminating defendant's obligation to pay plaintiff the aforesaid 30 per cent of his monthly earnings (with a minimum of $45 per month) one year from July 29, 1943. It is from this order that plaintiff appeals.

Plaintiff contends that the court, having heretofore approved the property settlement agreement entered into be-

tween the parties and having incorporated the same in the interlocutory decree and having awarded plaintiff 30 per cent of the defendant's monthly earnings (with a minimum of $45 per month), was without jurisdiction to modify the decree based on such agreement. She urges that this provision constituted a part of the adjustment of their property rights. Defendant, on the other hand, contends that said provision constitutes but an agreement for the payment by defendant to plaintiff in monthly installments of permanent support and alimony which the court below, under the express provisions of section 139 of the Civil Code, may modify from time to time upon proper showing. We cannot accept defendant's interpretation of the agreement.

The provisions of the property settlement agreement have been quoted at length for the purpose of showing: (1) the comprehensive language the parties used in an effort to settle their property rights completely and with finality; (2) the repeated expression of their intention to so settle such rights; (3) that the provision for the payment of 30 per cent of defendant's monthly earnings (with a specified minimum) is an integral and important part of such settlement; and (4) the marked similarity of the language used in this agreement, for the purpose of effecting a complete and final settlement of their property rights, with that used in the property settlement agreements construed in *Ettlinger* v. *Ettlinger* (1935), 3 Cal.2d 172 [44 P.2d 540], and *Puckett* v. *Puckett* (1943), 21 Cal.2d 833 [136 P.2d 1]. In the later case the Supreme Court said that (p. 840): "if there is a property settlement agreement providing as a part thereof for periodical payments to be made to the wife by the husband and the agreement is approved by the court and the payments ordered by the decree to be paid pursuant to the agreement, that order will not be subsequently modified, except by the consent of the parties." In *Henzgen* v. *Henzgen* (1944), 62 Cal.App.2d 214 [144 P.2d 428] this court said (p. 217): "It is now settled that if a husband and wife enter into a contract disposing of their property and include as an integral part of the agreement a provision that the husband shall pay the wife a sum fixed, monthly or otherwise, whether identified as alimony or unidentified, not only is she entitled to be paid that sum because of the contract, but if the agreement is approved and by some suitable means made a part of a subsequent judgment

of divorce, she is entitled to it by virtue of the judgment as well. In such event, notwithstanding the words of section 139 [Civil Code] that 'the court may from time to time modify its orders in these respects' it may not do so.''

The provision for the payment by defendant to plaintiff of 30 per cent of his income (with the fixed minimum) until the happening of one of the specified events, is plainly ''an integral and important element in the amicable adjustment'' (*Ettlinger* v. *Ettlinger, supra,* at p. 178) of the property rights of the parties. The fact that the payments are on a percentage basis rather than in a fixed sum indicates that the parties were attempting to permanently adjust and settle their property rights. Where a fixed sum is agreed upon by way of alimony it is a matter of common occurrence for one or the other of the parties to later seek a modification on the ground of changed conditions. This is particularly true where the former husband's income decreases. In this case the parties have anticipated this possibility and have agreed upon a provision which makes the adjustment a matter of simple arithmetic. Thus one of the usual grounds for subsequent modification of the decree has been effectively eliminated.

We are satisfied from an examination of the entire agreement, having particular reference to the above quoted provisions thereof, that it was the intention of the parties to definitely, fully and permanently adjust and settle all their property rights. It is difficult to see how they could have used language much more expressive of such an intention. We therefore conclude that the rule quoted from the Puckett case, *supra,* is applicable to and controls the instant case, and that the divorce decrees are not subject to modification insofar as the provision for the payment by the defendant to the plaintiff of 30 per cent of his monthly earnings (with the specified minimum per month) are concerned, in the absence of the consent of the parties.

██ In support of his argument that the parties intended that the court should retain jurisdiction over the matter of the plaintiff's support, the defendant points to the provisions of the contract wherein it was agreed that the parties were not attempting to deprive the court of jurisdiction of or over, or to withdraw from the consideration of the court the question of the property rights of the parties or the right of support on the part of the wife as against the husband, and that the

husband was not seeking to nor requiring the wife to withdraw any such question from the determination of the court. These provisions do not have the effect contended for by defendant. A trial court has authority either to approve or to disapprove a property settlement agreement. (*Ettlinger* v. *Ettlinger, supra,* at p. 178.) It was no doubt with this rule in mind that the parties inserted these provisions in their agreement so as to eliminate any possible doubt that might arise as to the willingness of the parties to have the court pass upon their property settlement. This conclusion finds support in the fact that the next sentence in the agreement provides that if the court approves the agreement it shall be made a part of the interlocutory decree. Naturally, the wife would not want to be required to withdraw these matters from the determination of the court because she would want the added security which a judgment affords and the opportunity to enforce it by contempt proceedings if the occasion therefor should arise.

As a further basis for supporting his theory that the court retained jurisdiction to modify the decrees with respect to the wife's support, respondent points to the language in the interlocutory decree where, after making the award as provided in the property settlement agreement, the decree in one place recites, ''and until further order of the court,'' and later in the same connection says, ''until otherwise modified by the court.'' If this had been an allowance under the statute as alimony, it is clear that, with certain exceptions (see *Long* v. *Long* (1941), 17 Cal.2d 409 [110 P.2d 383], and *Tolle* v. *Superior Court* (1937), 10 Cal.2d 95 [73 P.2d 607]), it might have been later modified upon an appropriate showing. But since the award was made as a part of the adjustment of the property rights of the parties and in accordance with their agreement ''no reason appears why the judgment, when it became final, did not also become unchangeable to the same extent as a final judgment in any other action'' (*Parker* v. *Parker* (1921), 55 Cal.App. 458, 460 [203 P. 420]). Hence, as held in the Parker case, the inclusion in the interlocutory decree of the above quoted language does not have the effect of continuing the jurisdiction of the court so as to permit the modification of the decrees in the respect here sought.

Respondent relies strongly on the case of *Wylie* v. *Wylie* (1938), 26 Cal.App.2d 167 [79 P.2d 152], but there was noth-

ing in that case, as there is in the instant case and as there was in *Ettlinger* v. *Ettlinger, supra,* (at p. 178), to indicate that the ''payments were to be made to and received by plaintiff as part of the property settlement and in lieu of property rights.'' On the contrary, the original award to Mrs. Wylie which was subsequently modified is treated throughout the opinion as alimony. As such, of course, the court had jurisdiction to modify it upon a proper showing of a change of circumstances.

The order appealed from is reversed.

Desmond, P. J., and Shinn, J., concurred.