[Civ. No. 14711.   Second Dist., Div. Three.   June 6, 1945.]

ZITA LUCACHEVITCH, Respondent, v. JOSEPH LUCACHEVITCH, Appellant.

Joseph Scott and J. Howard Ziemann for Appellant.

Charles J. Katz and Pacht, Pelton, Warne, Ross & Bernhard for Respondent.

SHINN, J.— On January 27, 1943, defendant was awarded a decree of divorce by default upon his cross-complaint, which charged cruelty. The parties have a boy who at the time of the divorce was twenty-seven months of age. After defendant filed his answer and before his cross-complaint was filed, the parties made an agreement settling their property rights, under which plaintiff was to receive $3,750 within the period of a year. The agreement made elaborate provision for the custody and support of the child; the parties were to have joint custody and the child was to be passed back and forth from the home of one parent to that of the other. The agreement was approved by the court and the provisions with reference to custody were incorporated in the decree. In November, 1943, defendant made application for modification of the decree so as to give him the exclusive custody of the child and plaintiff made a countermotion for exclusive custody. The court modified the decree as hereinafter stated and also awarded plaintiff attorney's fees in the amount of $1,700 and $150 as costs. Defendant has appealed.

Under the terms of the interlocutory decree the parents had joint custody, the child was to be in a nursery school during

the morning on school days; he was to be with plaintiff from noon of each Monday until Friday noon, when he was to be taken from school to the home of defendant, who was to return him to school the following Monday morning; he was to be with his father two-thirds of summer vacation periods and with his mother one-third. Part of each school holiday was to be spent with each parent. Nurses were to be selected by a designated physician, who were to be with the boy whether he was in the home of one parent or the other, and defendant was to pay this expense. The provisions of the decree respecting custody cover some nine pages of the clerk's transcript. We shall refer to those only which were modified; the others were continued in effect. The provision for joint custody was changed and exclusive custody was awarded to plaintiff, and she was given the right to select the nurses. Defendant, instead of having the infant with him from Friday noon until Monday morning of each week, is to have him from Friday noon to Sunday night on alternate week ends and on Sundays from 9 a. m. until 8 p. m. other week ends; each parent is to have the company of the child for one-half of his summer vacation period, and the decree provides that neither parent shall say anything in the presence of the child or of his nurses which would reflect upon the other parent. The court found that these changes were required for the best interest, health and welfare of the child, and this was the ultimate fact to be determined. The ground of the attack upon the custody provision is that there was no evidence whatever to support the general finding and certain evidentiary findings incidental thereto. The record contains the affidavits of the parties and more than 500 pages of transcript of the proceedings had in the taking of oral evidence. The only question of law involved upon this branch of the appeal is whether the court abused its discretion in so modifying the decree. We think it is quite clear from the record that there was no abuse of discretion. We would prefer to say nothing further upon this branch of the case but the earnest argument of appellant of insufficiency of the evidence requires us to proceed with an unpleasant duty.

In the beginning of their contest, neither party saw fit to submit to the court the question whether the other was fit to have the personal custody of the child for a part or all of the

time. By their agreement they acknowledged, and the court specifically found, that each of the parties was so qualified. Ten months later defendant made his application for exclusive custody, based upon his affidavit. He stated upon information and belief that the child had been allowed in the home and in the presence of a Mr. Ingster, plaintiff's present husband, whom she married as soon as the decree of divorce became final, and he stated in his affidavit that plaintiff's present husband had been responsible for the breaking up of the home, and it was further stated on information and belief that Mr. Ingster was suffering from tuberculosis. It was alleged that the child was continually taken to restaurants and was thereby frequently upset and that on many occasions plaintiff created scenes in the presence of the minor child, and had used filthy language and made false accusations against defendant in the presence of the child. These were charges which, if sustained, would have called for a drastic modification of the decree, but the court found, upon sufficient evidence, that they were not sustained. Aside from his own testimony as to words passing between himself and plaintiff, defendant presented no evidence in support of his charges except alleged statements made to him by the infant. His accusations were denied *in toto* by plaintiff in her testimony; she testified that the child had never been in the home of Mr. Ingster; that the latter had never visited her home, and that he had seen the child only momentarily, during the year following the granting of the decree. It was further shown without contradiction that while Mr. Ingster had had a tuberculosis infection, it had been arrested, was not infectious, and that it was not likely to recur. Plaintiff by her countermotion and affidavit charged defendant with interfering with the supervision of the child by the nurses, with imposing his will upon them in matters affecting the rearing of the child, with being unable to get along with the nurses, with attempting to influence and prejudice them and the child against her, and with constantly allowing the presence in his home and in the presence of the child, to assist in the rearing of the child, of a nurse whom he was forbidde. by the decree to employ for the child. The court found the .e charges to be true. The evidence disclosed that some seven or eight different nurses had been employed and that they went with the child from one home to the other. Thre only

of these nurses testified at the trial, one for defendant and two for plaintiff. The nurse who testified for defendant was the one whom he had been forbidden to employ. She testified that her frequent services were rendered without compensation, but her association with the child was obviously contrary to the spirit of the decree. Both of the nurses who testified for plaintiff had been trained and were experienced in the rearing of children, and had been selected by the physician as specified in the decree. They testified that defendant overruled them in their decisions as to the training of the child, that he allowed the child to have his own way to such an extent that he became spoiled and difficult to care for; that the child was excited and nervous in the home of defendant and that the living conditions there were not as satisfactory as they were in the mother's home, where the child was more calm and contented and where he had numerous playmates. Their testimony along these lines was specific and pictured the father as overindulgent to a degree that affected the child's training. Although respected friends of defendant testified to his love for the child and to his solicitude for its welfare, these witnesses did not have the opportunities for observation that the nurses had, and the court was not unjustified in according much weight to the testimony of the latter.

The court found that defendant had attempted to influence the nurses and the child against plaintiff, and this finding is claimed to be without support in the evidence. Both nurses testified that defendant had told them, at or about the time they were first employed, that plaintiff was an immoral woman; that she and her mother had both been prostitutes, and defendant, in a deposition taken shortly before the trial, not only admitted having made these statements but also gratuitously added that the statement he had made about the mother was true. One of the nurses testified that defendant told her that plaintiff had been a streetwalker in Paris and that he had lived with her there. He also called their attention to the fact that the child was born some months before his marriage to plaintiff. While there was no evidence that defendant had spoken in derogatory terms of the mother directly to the child, the court could scarcely have doubted that his statements to the nurses were inspired by a desire to prejudice them against plaintiff,

since he impressed upon them that they must take complete
charge of the child when he was in the mother's home and
keep the mother and child apart as much as possible. If he
had succeeded in influencing the nurses the result would have
been to disturb or destroy the normal relationship between
the boy and his mother. His efforts, it is true, were unsuc-
cessful; the nurses evidently did not subscribe to the exotic
view of the defendant that the events related by him, if true,
were more to the discredit of his wife than they were to him.
The nurses had lived in both homes, and were of the opinion,
for reasons which they stated, that the child was better off in
the home of the mother; they, as well as other witnesses,
testified that plaintiff gave the child intelligent and affection-
ate care and training. Considering the obvious motives of
defendant, it would not have been difficult for the court to
believe that he was willing to indulge in gross exaggeration
in order to destroy the good name of his wife. All of the
findings of which appellant complains were well sustained
by the evidence. The record would have furnished no jus-
tification for a modification of the decree which would have
awarded defendant sole custody of this 3½-year-old child.
The original decree was not the expression of the court's
judgment, which only followed the agreement of the par-
ties, and this agreement, with all of its elaborate provisions,
seems to have been shaped more to meet the demands of the
father than to promote the welfare of the child. The threat-
ened detriment to the child through being shuttled back and
forth between the parents appears to have been overlooked.
If there was any good reason for it at the time of the trial,
plaintiff's remarriage and the fact that she was providing
the child with a good home were important facts to be con-
sidered upon the application for modification. The decree
as modified is somewhat better than the original decree and
the changes that were made were justified by the conditions
which had developed under the original decree. The court
is concerned only with the interests of the child and cannot
allow the desires of the parents to interfere therewith. No
doubt the trial judge felt assured that the father would in
the future desist from the course of conduct which led to a
modification of the decree and would so deport himself that
further modification would not be required for the welfare
of the child. Defendant has no just cause to complain of the

modifications that were made. In view of the evidence, the decree is indulgent so far as the claims of the father are concerned.

Defendant's second point is that the order for the payment of attorney's fees and costs was erroneous, for the sole reason that it had been determined by the interlocutory decree that he should not be required to pay plaintiff's attorney's fees or costs in any other proceedings in the case and that this constituted a conclusive adjudication for all time to come. The decree, which followed the language of the agreement, provided that plaintiff should pay all attorney's fees incurred by her in the action or which might be incurred in any actions, motions or other proceedings to enforce the terms of the agreement "or to enforce any or all of the terms of this judgment or to enforce any rights which either of the parties may have in law or in equity against the other in respect to said child," and that the attorney's fees and costs incurred in any such matter should be paid by the party incurring the same. The decree in terms was sufficiently broad to bar plaintiff's right to receive additional attorney's fees and costs. Defendant's plea of res judicata should be sustained if the court could, by the decree, deprive itself of the power to order the payment of attorney's fees in the future in a proceeding for modification with respect to the custody of the child. Section 138 of the Civil Code provides that the court may either before or after a decree of divorce and "during the minority of any of the children of the marriage make such order for the custody, care, education, maintenance and support of such minor children as may seem necessary or proper and may at any time modify or vacate the same." This continuing jurisdiction is vested in the court, and is to be exercised, in the interests of children. It is their right to have the court hear and determine all matters which concern their welfare and they cannot be deprived of this right by any agreement of their parents. The welfare of children is of interest to the state. The Legislature has fixed the period within which such powers may be exercised by the courts as that of the minority of the children, and it is not within the power of the court to fix a shorter period. In every decree of divorce which has provisions respecting the custody and support of children the law becomes a part thereof and the decree is subject to the further order of the court, whether or not it be so stated.

Although the doctrine of res judicata applies generally to judgments of divorce which settle property rights (*Leupe* v. *Leupe* (1942), 21 Cal.2d 145 [130 P.2d 697]), it can have no application to the provisions for the custody and support of children. Under the express terms of the statute the decree may be modified or vacated at any time during the minority of the child. A decree of the court cannot supersede or nullify this statutory provision. A judgment is conclusive only to the extent that it is made so by law, and the court has no power to give conclusive effect to a judgment which is declared by statute to be subject to modification, especially where it involves the interests of children and the state, which are superior to the rights of the parties litigant.

Defendant relies upon the rule stated in *Kohl* v. *Kohl* (1944), 66 Cal.App.2d 535 [152 P.2d 494], and in the cases therein cited, that a decree of divorce which is based upon and gives effect to a property settlement agreement cannot be modified by the court without the consent of the parties. The rule is founded upon the right of the husband and wife to contract with each other with respect to their property and marital rights. It cannot be extended so as to interfere with the rights of children, which cannot be contracted away by the parents. (*Black* v. *Black* (1906), 149 Cal. 224 [86 P. 505]. See, also, *Puckett* v. *Puckett* (1943), 21 Cal.2d 833 [136 P.2d 1] and cases cited at pp. 839-40.) In *Ott* v. *Ott* (1932), 127 Cal.App. 325 [15 P.2d 897], it was held that a property settlement agreement sanctioned and approved by the trial court in a divorce action did not have the effect of releasing the wife's claim for counsel fees and costs in a proceeding to modify the judgment with respect to the custody of the children, in which the welfare of the children was alone involved. While the terms of the agreement were not stated in the opinion, the case was decided not upon the ground that the agreement did not purport to release the husband from the obligation to pay attorney's fees but upon the ground that the wife had no power to free him from that obligation in a proceeding involving the welfare of children. The cases are unanimous in holding that in deciding questions involving the custody of children, the court is called upon to determine only what is best for the general welfare of the children. Controversies over custody are oftentimes long drawn out and bitter and they frequently present dif-

ficult questions for decision, requiring long and thorough preparation by competent counsel. There is a necessity for the services of attorneys in order that the court may be informed as fully as possible as to the competency and fitness of the respective parents, the conditions and influences that would surround the children in the home of one parent or that of the other and, where change of custody is sought, the court must make the most complete investigation as to whether the best interests of the children require that a change be made. The court is therefore vested with a broad discretion to order payment of attorney's fees whenever it appears necessary for a proper presentation of the case. This power is not limited by statute except as the general power of the court is limited to proceedings during the minority of the children, and it would be contrary to the policy of the law for the court to make any decree or order by which it might be hampered in future proceedings. A decree which declared that no order could be made in the future for the payment of attorney's fees in matters affecting the custody or support of children would be to that extent void. The decree here, insofar as it purports to release defendant from the obligation to pay attorney's fees in the instant proceeding, is of no effect. It is not contended that the amounts allowed as attorney's fees and costs are excessive.

The judgment is affirmed.

Desmond, P. J., and Wood (Parker), J., concurred.