[Civ. No. 12132. Third Dist. Jan. 17, 1969.]

DAVID F. SPRENGER, Petitioner, v. THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent; MARY ELLEN SPRENGER, Real Party in Interest.

Rowland, Paras & Clowdus and George E. Paras for Petitioner.

No appearance for Respondent.

Lewis & Hendry and George B. Hendry for Real Party in Interest.

PIERCE, P. J.—In the superior court petitioner (''husband'') moved for a modification of support payments payable to real party in interest (''wife'') under the terms of a property settlement agreement. The parties are divorced.

The divorce is final. Wife opposed the motion and it was denied by respondent court. It held that it lacked jurisdiction because the support payment provision had been a part of an "integrated property settlement agreement,"[1] which the divorce court had had no power to modify. ▆ We do not agree with that conclusion. There is ambiguity—uncertainty—in the agreement. Contemporaneously with the making of the agreement it was referred to the court in the divorce action. That court interpreted the agreement. It incorporated ("merged") the agreement into the decree. It interpreted the agreement to pay alimony as being separable from the property settlement provisions. So treating the support payment provision, it deemed it to be modifiable under Civil Code section 139 and the decree so provides. The agreement is susceptible to that interpretation. The parties accepted the court's interpretation. The decree has long since become final. The ruling is res judicata. ▆ Husband petitions for a writ of mandate which is a proper remedy in the premises. (*Golden Gate Tile Co.* v. *Superior Court* (1911) 159 Cal. 474, 477 [114 P. 978]; *MacDonald* v. *Superior Court* (1940) 40 Cal.App.2d 517, 519 [104 P.2d 1071].)

The property settlement agreement was executed in September 1958. Husband and wife were represented by separate attorneys. The agreement contained provisions settling property rights, provisions for the custody of a minor child and provisions for the support and maintenance of the child and of the wife. The instrument contained a recital: "the parties are desirous of finally and forever adjusting, agreeing upon, settling and determining their respective claims which each of the parties has now or may hereafter acquired [*sic*] as against the other by virtue of the marriage relation, as heir at law, community rights, or otherwise. . . ." Preceding the body of the agreement is the statement that its provisions were "in consideration of the mutual covenants and agreements herein contained. . . ." The parties then listed all of their property and after so listing it divided it. Property holdings, although not evaluated by the parties, do not seem to have been extensive. The agreement then proceeds to child custody and support provisions.

The wife was given custody of the minor child, then 11

---

[1]Hereinafter in this opinion we shall refer to an "integrated property settlement agreement" as one in which the parties intend the support payment provisions to be made as an integral part of the settlement of property rights to the end that they are interwoven reciprocal rights and obligations.

years old, with reasonable visitation rights in the husband. The latter agreed to pay $200 monthly for the child's support. Paragraph 9 provides: "[Husband] agrees to pay to [wife] the sum of $300.00 a month, payable monthly, as and for his full and only obligation regarding support and maintenance of the [wife]. Said obligation to pay support and maintenance shall cease upon the remarriage of the [wife]." The agreement discloses nothing and we have not been informed regarding the husband's earnings when the agreement was made. He had a position with Aerojet General Corporation. Paragraph 11 contains a provision to the effect that thereafter all property acquired by either party from whatever source would be and remain his or her sole and separate property. There was a waiver by each spouse of all claims to the other's property, future earnings, claims against the other's estate, or to a probate homestead, family allowance, etc.

Provisions *absent* from the agreement are as important as those set forth therein: There is no provision that the support provisions of the contract were to be deemed unseverable from the property settlement provisions. There is no statement that each provision shall be in consideration for each of the other provisions.[2] There is no statement that the support provision constitutes reciprocal consideration for the provisions relating to the division of property.

The agreement *does* state that the support payments provided ($300 per month) were the husband's "full and only obligation regarding support and maintenance. . . ." Did the parties intend that to have been both a ceiling and floor foreclosing any possibility of modification thereafter? The instrument does not say so nor do the immediate acts of the parties thereafter indicate that to have been their intent.

The agreement is silent as to any intent that it be referred to the divorce court for its incorporation or merger into the decree. Yet the wife—the party here claiming her intent was to fix an immutable obligation upon her husband to pay her $300 a month (unless she should remarry)—did refer it to the trial court. Within a week or so after the agreement was executed she filed a complaint and obtained a divorce which was uncontested. The complaint recites the execution of the

---

[2] We do not deem the provision "in consideration of the mutual covenants and agreements herein contained" as anything more than the traditional boilerplate of legal draftsmen diffusively expressing a bilateral agreement.

property settlement agreement. It alleges "the sum of $300.00 is a reasonable sum to be allowed per month as and for alimony." It prays for an allowance of such alimony and for a merger of the property settlement agreement into the decree. The decree was entered September 30, 1958. The form of decree was prepared on the stationery of the wife's attorney. It provides: "Defendant shall pay to plaintiff the sum of $300.00 per month as and for alimony, said alimony to continue until the remarriage or death of plaintiff, *or further order of the court.*" (Italics ours.) The property settlement agreement was approved, incorporated, attached, and ·the court ordered its performance. In the final decree entered October 5, 1959, all terms of the interlocutory decree were incorporated by reference. Husband is not in default in his monthly payments to wife. The minor child is now over twenty-one.

■ Civil Code section 139 then (and now) includes the provision: "In any interlocutory or final decree of divorce . . . the court may compel the party against whom the decree . . . is granted to make such suitable allowance for support and maintenance of the other party for his or her life, or for such shorter period as the court may deem just, having regard for the circumstances of the respective parties. . . ." Provision was and is also contained therein for the modification of such support orders.

Notwithstanding that statutory provision, it has become well settled that marital couples contemplating separation or divorce may, through the medium of a truly integrated property settlement agreement, wipe out either in whole or in part the right of a spouse to support.

At the time the couple now before this court had separated and entered into their contract (1958) the Supreme Court of California had by a series of decisions drawn a rather comprehensive blueprint on how an integrated property settlement may be effected and what its consequences are. In *Adams* v. *Adams* (1947) 29 Cal.2d 621 [177 P.2d 265], the court had both expressed approval of fairly arrived at contracts by couples contemplating divorce and analyzed the several types of agreements generally made. Into the first category the decision places contracts covering both division of property and provisions for support, the latter being severable from the property division. A second category includes contracts relating to a division of property. In such contracts it is pointed out the parties may provide for money

payments by one spouse to the other. Such payments are not to be confused with alimony. The sums so paid—either in a lump sum or periodically—are in lieu of a division in kind of community property. The third category is that in which the wife *does* receive specified alimony and waives all support except as provided in the agreement in consideration of a more favorable, or any specified, share of the community property.

Agreements in the first category, the court in *Adams* declares, may be referred to the divorce court, which may both originally adopt and thereafter modify the alimony provisions. Agreements in the second category may not be modified insofar as they relate to the property division (including the lump sum or periodical in-lieu payments). But the court may grant alimony under Civil Code section 139. Contracts in the third category are not subject to modification at all. The reason is obvious. The court could not add alimony provisions without basically changing the agreement of the parties.[3]

The *Adams* case was followed seven years later by *Dexter* v. *Dexter* (1954) 42 Cal.2d 36 [265 P.2d 873]. In *Dexter* the court held that a transfer of a major portion of the community property to the wife was not an indispensable factor in effecting an integrated property settlement agreement. There the parties had divided the community property equally. The court stated that the rationale of *Adams* applied equally to integrated bargains of other types. The court states (on p. 43 of 42 Cal.2d) : "Thus if the wife agreed to accept less than her share of the community property in exchange for greater support and maintenance payments, it would be unjust to her subsequently to hold that the payments were alimony subject to reduction on motion of the husband. . . . Accordingly, the fact that the community property was divided equally has no bearing on the validity of the provision of the agreement where both parties waived all rights to support and maintenance other than as provided therein." The agreement in *Dexter* was held to be integrated. So also were the agreements in *Fox* v. *Fox* (1954) 42 Cal.2d 49 [265 P.2d 881], and *Flynn* v. *Flynn* (1954) 42 Cal.2d 55 [265 P.2d 865], decided simultaneously with *Dexter*. *Flynn* contains further enlightenment regarding the effect of a merger of the

---

[3]The facts in *Adams* placed it within the third category. There the wife had received substantially all of the community property in consideration for which she, an able bodied, skilled, formerly employed, person, had waived all payment of support by the husband after an initial period of 18 months.

agreement into the divorce decree. It discusses (on p. 58 of 42 Cal.2d) the various situations in which the importance of the question of merger will arise: (1) in the determination of whether contempt will lie;[4] (2) whether or not execution or a suit on the judgment are available; (3) whether or not an action may be maintained on the judgment; and, of particular interest here, (4) "whether or not there is an order of the court that may be modified under the provisions of section 139 of the Civil Code."

The court states (on p. 58): "In any of these situations it is first necessary to determine whether the parties and the court intended a merger. If the agreement is expressly set out in the decree [as it was in the case now before this court], and the court orders that it be performed [as it did here], *it is clear that a merger is intended.*" (Italics ours.)

It is unnecessary to cite, or recite the discussion of, all of the cases which followed *Flynn* involving integrated agreements. The rules are summarized in *Plumer* v. *Plumer* (1957) 48 Cal.2d 820 [313 P.2d 549]. There it is stated (on pp. 824-825): "An agreement is integrated if the parties have agreed that the provisions relating to division of property and the provisions relating to support constitute reciprocal consideration. The support provisions are then necessarily part and parcel of a division of property. Such an agreement would be destroyed by subsequent modification of a support order based thereon, without the consent of the parties. [Citations.] It is immaterial whether or not the marital property is divided equally. [Citations.] It is immaterial that the amount of the marital property is small. . . . It is likewise immaterial that the agreement calls for payments for 'support' or 'alimony.' [Citation.]

██ "A support order based upon an integrated agreement may be modified if the parties so provide." (See *DiMarco* v. *DiMarco* (1963) 60 Cal.2d 387, 391 [33 Cal.Rptr. 610, 385 P.2d 2].)

One other Supreme Court case should be referred to. In *Levitt* v. *Levitt* (1965) 62 Cal.2d 477, 481 [42 Cal.Rptr. 577,

---

[4]That question stirred up a 10-year furor among legal scholars and the State Bar by the decision in *Bradley* v. *Superior Court* (1957) 48 Cal.2d 509 [310 P.2d 634], and *Plumer* v. *Superior Court* (1958) 50 Cal.2d 631 [328 P.2d 193], wiping out contempt as a weapon to enforce support payments contained in an integrated and merged property settlement agreement. Fortunately that problem is not involved here. It has hopefully been resolved by the Legislature as to agreements postdating its enactment. (See 1967 amendment of Civ. Code, § 139; Stats. 1967, ch. 844, p. 2269.)

399 P.2d 33], there was a recital of intent by the parties stating "that the consideration for the execution of the agreement was the resolution of property claims *and the settlement of rights to support and maintenance.*" (Italics ours.) There was also, as the court found, "other indicia of an integrated agreement." But there was a further provision (p. 480): "Defendant [husband] . . . agrees not to seek any modification or make any collateral attack concerning alimony or child support except in the event of a substantial decrease from Defendant's 1956 income." The court held the support provisions were severable from the provisions for the property settlement. A court order modifying support payments from $500 per month to a token amount was affirmed notwithstanding the fact that there was no showing that the husband's income *had* substantially decreased. The agreement had been presented to the divorce court, incorporated into the decree and the parties ordered to comply with it. Having found the support payments severable, the court (citing *Hough* v. *Hough* (1945) 26 Cal.2d 605, 612 [160 P.2d 15]) stated the payments were modifiable subject to the discretion of the court as justice might require; and that the provisions of Civil Code section 139 authorizing such modification "becomes an implied part of any such agreement whenever, as herein, the agreement is merged in the decree." (P. 482.)

 We do not read the agreement now before this court as one which on its face and as a matter of law shows that the parties intended the support provision to be inseverable from the provisions for property settlement. In every one of the cases discussed above holding that there was integration there has been language either stating or strongly indicating an intention that support payments were to constitute reciprocal consideration for the settlement of property. In every one there was a specific waiver of any right to support payments other than those provided. In the agreement before us there is a waiver clause too. But any reference to support or alimony is conspicuously absent therefrom. Most important of all there are the acts of the wife immediately after the agreement was entered into. She took it before the divorce court. That court incorporated it in *haec verba* into the decree. It became merged therein. The alimony provision prayed for in the complaint was adopted by the court. The court in ordering payment of the amount of alimony to which the parties had agreed expressly declared that payment of that amount was

until "further order of the court." Thus, with wife's full cooperation—in fact at her instance—the court judicially construed the property settlement agreement as being noninte-grated and modifiable.

In *Lee* v. *Lee* (1967) 249 Cal.App.2d 407 [57 Cal.Rptr. 327], the property settlement agreement had aspects indicating an intent of the parties that support payments be integrated. Those provisions, however, as here, were not unequivocal. The property settlement agreement had been referred to the divorce court, which had approved it, ordered the parties to comply with it, provided for support payments to be made to the wife and had stated that such provisions were subject to "further order of Court in modification thereof." Later the wife sought modification which was denied upon the ground that the decree was based upon an integrated agreement. In reversing the order the appellate court said (on p. 409) : ". . . But that issue [i.e., of integration] is no longer open for determination." After quoting the provisions of the decree adverted to above, it stated that the decree was long since final and constituted a judicial interpretation of the agreement, that such interpretation was that the periodic support payments were severable from the other covenants, and that the court had treated the support payments as being subject to modification by future court order. The opinion also stated that irrespective of whether the interpretation was "the one we would have made" it was one which the divorce court had had power to make. The court concluded: ". . . Not having been challenged by appeal or otherwise, it is now an interpretation binding on the parties, on the trial court in the present proceeding, and on us."

*Lee* v. *Lee* has been cited with approval in *Egan* v. *Egan* (1967) 251 Cal.App.2d 577, 583 [59 Cal.Rptr. 705]. It has also been cited for the converse of its holding, namely, that when an agreement has been referred to the divorce court for a determination as to its status, and the court determines it to be an integrated agreement and nonmodifiable, that holding is res judicata. (*Jackson* v. *Jackson* (1967) 253 Cal.App.2d 1026, 1033 [62 Cal.Rptr. 121].)

*Kohl* v. *Kohl* (1944) 66 Cal.App.2d 535 [152 P.2d 494], is cited by wife. In that case the divorce decree had similarly contained an approval of support payments as provided in the agreement "until further order of the court." On appeal it was held that after the decree had become final it was nevertheless not modifiable. But in *Kohl* the appellate court had

found the contract to be an integrated property settlement agreement as a matter of law. The court says (on p. 541): ". . . It is difficult to see how they [the parties] could have used language much more expressive of such an intention." We do not have a similar agreement here.

We do not have to, and do not, either approve or disapprove the reasoning or ruling of the *Kohl* case.

The Supreme Court has sometimes stated that there is a social policy which favors the making of property settlement agreements by marital couples about to separate. (*Adams* v. *Adams, supra,* 29 Cal.2d 621, 624; Armstrong, *Family Law* (1965) 53 Cal.L.Rev. 121, 135.) ■ There is no social policy either against the enforcement of *integrated* property settlement agreements when the parties clearly, fairly and with open eyes and minds have expressed an agreement that they intend that support provisions shall be interwoven (integrated) with property settlement provisions. But when the intent of the parties is *doubtful,* it does not follow that social policy demands that courts must lean over backwards to hold that such integration is a favored objective. An integrated support provision is inflexible. Inflexibility in decisions made by sometimes emotionally troubled couples is not always a desirable goal. Under such circumstance, where intent is not clear, public policy may better be served if agreements reaching far into the future are left to future judicial determination rather than to crystal-ball gazing. Vague statements in agreements susceptible of two interpretations are better translated to permit courts to look both backward and forward in a determination of what the aims of the parties actually had been when they separated.

■ It is stated in *Hough* v. *Hough, supra,* (26 Cal.2d 605, at p. 612): ". . . The settlement of property rights should be final in order to secure stability of titles. Support allowances on the other hand should be subject to the discretion of the court as justice may require." That is the position which the Legislature has taken. By amendment in 1967 (Stats. 1967, ch. 133, p. 1165, ch. 844, p. 2269, ch. 1308, p. 3130) Civil Code section 139 has been changed. It now contains a provision: ". . . The provisions of any agreement or order for the support of either party shall be subject to subsequent modification or revocation by court order except as to any amount that may have accrued prior to the order of modification or revocation, and except to the extent that any written agreement, or if there is no written agreement, any oral agreement entered

into in open court between the parties, specifically provides to the contrary.''

A peremptory writ of mandate will issue commanding respondent court to take jurisdiction and hear the motion of petitioner to modify the interlocutory and final decree of divorce insofar as it relates to the support and maintenance of wife.

Regan, J., and Janes, J., concurred.

The petition of the real party in interest for a hearing by the Supreme Court was denied March 12, 1969.