APPLICATION ON BEHALF OF MAX SIEBEN ENKE AND
KAREN JEAN ENKE, MINORS.

No. 9571.
Submitted July 20, 1955. Decided July 27, 1955.
Dissenting Opinion August 13, 1955. As Amended August 18, 1955.
Certiorari U. S. Supreme Court denied December 12, 1955.
287 Pac. (2d) 19.

Mr. Chief Justice Adair and Mr. Justice Bottomly dissented.

Charles v. Huppe, Leo J. Kottas, Helena, for petitioner.

Edmond G. Toomey and Michael J. Hughes, William H. Clarke, Helena, for respondent.

Mr. Huppe, Mr. Kottas, Mr. Toomey, Mr. Hughes and Mr. Clarke argued orally.

MR. JUSTICE DAVIS:

Original proceeding by writ of habeas corpus to obtain the custody of two minor children.

On the application of one Stephen Enke made July 2, 1955, a writ of habeas corpus issued out of this court directed to one Jean S. Baucus to inquire into the custody of Max Sieben Enke and Karen Jean Enke, the minor children of Stephen Enke and Jean S. Baucus, formerly Jean S. Enke. On July 6, 1955, in obedience to this writ the respondent, Jean S. Baucus, made return thereto (1) by motion to quash, and (2) without prejudice to that motion by pleading on the merits. To this return a traverse has been made on the part of the petitioner. The matter has been argued orally and on briefs submitted by

both the petitioner and the respondent. Submission has now been had for our opinion and judgment.

Hereafter we shall refer .to the petitioner, Stephen Enke, as the father, to the respondent, Jean S. Baucus, as the mother.

The material facts we gather from the return and the traverse thereto and from the exhibits submitted at the hearing. They follow.

The mother, then Jean Sheriff, and the father, Stephen Enke, were married in 1940 at Helena, Montana. Subsequently their residence was at Los Angeles, California, where they made their home until May 18, 1944, or thereabouts. To this union there were born the.two children who are the subjects of this proceeding. Up to May 18, 1944, or shortly thereafter, their domicil and that of each of their parents as well was in California.

There on April 29, 1944, the father and mother came to the parting of their ways. As of that date a settlement agreement containing this paragraph was executed by them, viz.,

"The parties are the parents of Max Sieben Enke, aged two and one-half years, and Karen Jean Enke aged three and one-half months. The children are of tender years and husband recognizes that it is natural and proper that wife should have their custody and agrees that wife shall have the sole custody of said children and each of them. In making this agreement husband understands that it is the intention of wife to reside with the said children at least in the immediate future in the State of Montana and that she will take the children to Montana shortly after the execution of this agreement. Husband shall have the right to correspond with the children and the right to visit them occasionally at the place of their residence at reasonable times and in reasonable manner after making arrangements with wife for such visits."

Subsequently the mother sued for divorce in the Superior Court of Los Angeles County, California, and thereafter on May 18, 1944, was granted by that court upon the default of the father an interlocutory judgment of divorce, in which there is found this decretal paragraph:

"It is further ordered and adjudged that Plaintiff [Jean S. Enke] shall have the sole custody of the minor children Max Sieben Enke, aged 2½ years, and Karen Jean Enke, aged 3½ months, and the right to determine their place of residence, and that Defendant [Stephen Enke] shall have the right to correspond with the said children, and the right to visit them occasionally at the place of their residence at reasonable times and in reasonable manner after making arrangements with Plaintiff for such visits, and this court reserves the right to make appropriate orders for the support of the children."

By the final judgment in this matter, entered on May 22, 1945, the provision here for the custody of these children was adopted, and thereby "made binding on the parties affected thereby."

Consistent with the settlement agreement of April 29, 1944, and the consent of the father given therein, and with the interlocutory judgment of May 18, 1944, the mother returned in May 1944 with her two children to Helena, Montana, where ever since she has made her home. There in 1947 she was married to one John Baucus, with whom she has since lived at Helena and on an adjacent ranch in Montana, as his wife, and with whom there since this marriage she has made a home for the children, Max and Karen, and also her son by her second marriage, John Frederick Baucus, born September 19, 1949.

About October 1, 1954, the father applied to the California Court at Los Angeles for a modification of the interlocutory decree of May 18, 1944, that he might have the custody of his children during July of each year. Notice of these proceedings was given the mother by service upon her at Helena in Montana. She responded by authorizing an attorney of her selection at Los Angeles to appear for her and resist the father's application. She also offered affidavits when that application was heard, which were received in evidence. Her attorney appeared at the hearing and, we shall assume, cross-examined the father and his witnesses on her behalf.

The mother herself did not in person attend this hearing.

Neither of the children was in California at any time after May 1944. No notice or process designed to bring them before the California Court was given or served upon them so far as this record discloses. Neither appeared personally or otherwise at the hearing.

Specifically, neither of these children was in California at the time of the hearing, or when the order modifying the interlocutory decree was made November 23, 1954.

On that date, however, the California Court, proceeding under Cal. Civ. Code, section 138, modified its judgment of May 18, 1944, to provide:

"* * * The defendant may have the physical custody of the minor children for the month of July of each year, beginning July, 1955; the defendant is ordered to provide the necessary transportation to and from the home of the plaintiff. The plaintiff is restrained from registering the minor children in school or elsewhere in any name other than their natural surname of Enke. * * *"

Subsequently the father sought to have the children, Max and Karen, turned over to him on July 1, 1955. The mother refused to surrender them. This litigation followed.

In our consideration of this matter we are met first with the mother's motion to quash the writ issued and to dismiss these proceedings. In our view this motion is not well taken. It is accordingly denied.

No particular formality is required to frame a petition sufficient to warrant the issuance of the writ of habeas corpus. Nor are the proceedings themselves marked by adherence to form. State ex rel. Giroux v. Giroux, 19 Mont. 149, 155, 156, 47 Pac. 798; McDowell v. Gould, 166 Ga. 670, 144 S. E. 206; 39 C. J. S., Habeas Corpus, section 80, pages 626, 627, section 82, page 635; 29 C. J., Habeas Corpus, section 158, pages 142, 143. Measured by the rule of these authorities we find the petition upon which the writ here issued sufficient and that R. C. M. 1947, section 94-101-2, is satisfied.

Moreover, when the writ has issued the function of the petition

or application therefor is fulfilled. 39 C. J. S., Habeas Corpus, section 80, page 629; 29 C. J., Habeas Corpus, section 158, page 143. Thereafter the pleadings or papers before the court whereon the matter is heard are the return made to the writ, which serves the purpose of a complaint on the part of the respondent, and the traverse or other answer to that return tendered by the petitioner. On these papers the court has jurisdiction to proceed. In re Collins, 151 Cal. 340, 342, 90 Pac. 827, 91 Pac. 397, 129 Am. St. Rep. 122; State v. Olsen, 53 Idaho 546, 549, 26 Pac. (2d) 127; 39 C. J. S., Habeas Corpus, section 88, pages 651, 652; 25 Am. Jur., Habeas Corpus, section 124, pages 235, 236. Without more then we turn directly to the merits.

There the question for decision is: Did the California Superior Court at Los Angeles have jurisdiction on November 23, 1954, to modify the interlocutory judgment of May 18, 1944, and accordingly give the custody of Max and Karen Enke to the father for the month of July of each year? We conclude, the California Court had no such jurisdiction, that its order of November 23, 1954, was therefore void.

To be specific: When in May 1944 these children were brought by their mother from California to Helena, Montana, there to make their future home with her she acted in entire harmony with the California decree, which gave her the sole custody of these children and the right to determine their place of residence. Restatement, Conflict of Laws, sections 146, 32, pages 211, 57. She acted also with the consent and approval of the father as expressed in the settlement agreement of April 29, 1944.

Accordingly then she lost her California domicil, and acquired a new domicil of choice in Montana. Montana has been her domicil ever since. In re Coppock's Estate, 72 Mont. 431, 434, 435, 436, 234 Pac. 258, 39 A. L. R. 1152; Restatement, Conflict of Laws, sections 29, 9, 15, pages 54, 17, 32. Likewise in May 1944 the domicil of Max and Karen Enke also was lawfully fixed in Montana. Their domicil too has remained here

ever since; for it is settled law that minor children whose parents are divorced take the domicil of the parent to whose custody they have been legally given. R. C. M., 1947, section 61-121; In re Metcalf's Estate, 93 Mont. 542, 546, 19 Pac. (2d) 905; Restatement, Conflict of Laws, section 32, page 57. Moreover, these children have never since been physically present within the State of California nor for that matter so far as this record shows out of the State of Montana.

In these circumstances the fundamental question whether the California Court had jurisdiction on November 23, 1954, to make a valid order awarding the physical custody of these children to the father has been answered by different courts, treatises and learned authors in at least three different ways. The California Supreme Court itself in Sampsell v. Superior Court, 32 Cal. (2d) 763, 777, 197 Pac. (2d) 739, 748, has recently summarized these divergent views with authorities noted to support each in a paragraph which merits quotation here:

"Several theories have been advanced with respect to the correct basis for jurisdiction over the subject matter of a child custody proceeding. According to one theory jurisdiction over children's custody is based on *in personam* jurisdiction over the children's parents. Anderson v. Anderson, 74 W. Va. 124, 126, 81 S. E. 706. Another theory regards the question of custody as simply one of status and as such subject to the control of the courts of the state where the child is domiciled. Rest. Conflicts 117, 148; see Goodrich, Custody of Children, 7 Corn. L. Q. 1, 2; 2 Beale, Conflict of Laws, page 717; Dorman v. Friendly, 146 Fla. 732, 740, 1 So. (2d) 734. A third theory requires the child to be physically present within the state, on the ground that the basic problem before the court is to determine what the best interest of the child is, and the court most qualified to do so is the one having access to the child. See Stumberg, Children and Conflict of Laws, 8 Univ. Chic. L. Rev. 42, 55-56; Stumberg, Conflict of Laws, page 299; Sheehy v. Sheehy, 88 N. H. 223, 225, 186 A. 1, 107 A. L. R. 635."

Clearly in the Sampsell case where both parents as at bar

were themselves before the court, California leans toward the second of these theories, if in truth its Supreme Court does not adopt that premise outright as the foundation for its decision there. For it appears beyond any question from that opinion that California's jurisdiction in that case was bottomed upon the finding of a domicil for the child in California as distinguished from the personal jurisdiction which the lower court undoubtedly had over the parents, but which the California Supreme Court said was not enough. See Sampsell v. Superior Court, supra, 32 Cal. (2d) particularly at pages 773, 781, 197 Pac. (2d) at pages 746, 751.

Whether we are right or wrong, however, in our understanding of the Sampsell case, our own conclusion at this point is that the second of these statements of the principle of law here involved is sound, and should be made the rule of our decision in this case. For this conclusion there are solid reasons, as we see them, not the least of which is that in Talbot v. Talbot, 120 Mont. 167, 181 Pac. (2d) 148; and Thrift v. Thrift, 54 Mont. 463, 171 Pac. 272, this court has already committed itself to the doctrine that the state of a minor child's domicil is the state vested with jurisdiction to control his custody.

In the Talbott case the facts differed from those of the controversy at bar, but the underlying principle, which determined the disposition of the writ of habeas corpus issued in that case, was nevertheless the same rule of law we apply in this proceeding. There Washington was the state of the domicil of the child whose custody was in issue, because Washington was the domicil of the parent (the mother) with whom the child lived after the separation of her parents and pending the divorce action brought at Seattle against the father. See Talbot v. Talbot, supra, 120 Mont. at pages 172, 173, 181 Pac. (2d) at pages 150, 151. The authorities generally are in agreement here. Wear v. Wear, 130 Kan. 205, 222, 285 Pac. 606, 72 A. L. R. 425; Elliott v. Elliott, 181 Ga. 545, 182 S. E. 845; Callahan v. Callahan, 296 Ky. 444, 177 S. W. (2d) 565; Boardman v. Boardman, 135 Conn. 124, 138, 62 A. (2d) 521, 13 A. L. R. (2d) 295, and an-

362

notation at 306, pages 308 to 310; Restatement, Conflict of Laws, section 32, pages 57, 58; R. C. M. 1947, sections 61-105, 61-106; 1 Beale, Conflict of Laws, Ch. 2, section 32.2, page 216. Compare Cheever v. Wilson, 9 Wall. 108, 124, 76 U. S. 108, 124, 19 L. Ed. 604, 608. It followed upon these facts that Washington had jurisdiction to award the custody of the child to the mother; and this court so held.

In Thrift v. Thrift, supra, the child of the parties lived with the father in Indiana, which was accordingly the state of his domicil. It followed upon these facts that the Montana court had no jurisdiction to award the custody of this child to the mother; and this court so held.

In short, by our finding here that Max and Karen Enke have been domiciled in Montana since May 1944 we have forecast the necessary conclusion consistent with our own precedents in the Talbott and Thrift cases that the California Court on November 23, 1954, was wholly without jurisdiction to enter any order touching their custody, because neither was then in, or domiciled within the State of California. But we do not propose to rest our judgment in this case alone upon the narrow premise of our own decisions.

In the Restatement, Conflict of Laws, section 117, page 177, we find the rule in point put in these words: "A state can exercise through its courts jurisdiction to determine the custody of children * * * only if the domicil of the person placed under custody * * * is within the state." Translated into the language of the controversy in hand this sentence means that the Superior Court of the State of California at Los Angeles on November 23, 1954, lacked the jurisdiction essential to its exercise of the authority it assumed under section 138 of the California Civil Code when it undertook to give the custody of these children to the father for the month of July of each year, i. e., because the children were not then domiciled in California.

The weight of authority holds to this view. Kruse v. Kruse, 150 Kan. 946, 96 Pac. (2d) 849; In re Hughes, 73 Ariz. 97, 237 Pac. (2d) 1009; Elliott v. Elliott, supra; In re Erving,

109 N. J. Eq. 294, 157 A. 161; State ex rel. Larson v. Larson, 190 Minn. 489, 252 N. W. 329; Dorman v. Friendly, 146 Fla. 732, 1 So. (2d) 734; Gilman v. Morgan, 158 Fla. 605, 29 So. (2d) 372; Duryea v. Duryea, 46 Idaho 512, 269 Pac. 987; McAdams v. McFerron, 180 Miss. 644, 178 So. 333; Lake v. Lake, 63 Wyo. 375, 409 to 413, 182 Pac. (2d) 824; Callahan v. Callahan, supra; Commonwealth ex rel. Graham v. Graham, 367 Pa. 553, 80 A. (2d) 829; Commonwealth ex rel. Freed v. Freed, 172 Pa. Super. 276, 93 A. (2d) 863; In re Alderman, 157 N. C. 507, 73 S. E. 126, 39 L. R. A., N. S., 988; 2 Beale, Conflict of Laws, Ch. 5, section 144.3, pages 717 to 719; 2 Nelson, Divorce and Annulment (2d Ed.), Ch. 15, section 15.32, pages 216, 217; 43 C. J. S., Infants, section 5, pages 52, 53; 31 C. J., Infants, section 6, pages 988, 989; 17 Am. Jur., Divorce and Separation, section 689, page 524.

The reasoning which leads to this solution is rested upon the law's recognition of the fact, which is not to be denied, that a child although a minor is nevertheless an entity distinct and apart from his father or mother, guardian or other person in whose custody by chance he may be at the moment. His separate existence is admitted, even when it is ignored. In general, however, as a person he has his individual rights under the law, and is held to an individual responsibility by the law, both commensurate with his age and mental stature.

In other words admittedly a minor has a juristic status of his own to which it is difficult indeed to deny recognition when his custody is the question before the court, and even though the contest is between his parents, who themselves have submitted to the jurisdiction of the court. For he is the real party in interest in any such case as is evidenced by the familiar rule that in awarding his custody the paramount inquiry is always his welfare and best interests.

It is thus that the custody of a minor has come to assume in the modern law at least the aspect of a distinct *res* akin to the marital status of husband and wife, but apart itself from either parent and always to be distinguished from their rights

and responsibilities. Hence the rule that this *res* must in any case be before the court to give it the requisite jurisdiction, if the court would reach the question of custody. Hence the corollary of that rule that it is not enough the parents are themselves personally before the court bound by its orders and judgment, as the California Supreme Court put the problem in its opinion in the Sampsell case cited.

The *res* must also be there, or jurisdiction fails. That *res* is made up of the rights and obligations which the phrase ''custody of a minor'' connotes, and by almost universal agreement among courts and legal scholars today is inseparable from the domicil of the minor himself. Where then the minor's domicil is not within the jurisdiction at the time, as are the facts at bar, the *res* likewise is not within the jurisdiction. The courts may not proceed even with both parents before it. The authorities which we have noted heretofore in this opinion fairly sustain this statement of the law.

Nor is the father's case bolstered by the argument of his counsel that the California court had a continuing jurisdiction in November 1954 because it is conceded there was jurisdiction there in. May 1944. That original jurisdiction was voluntarily surrendered by California and accordingly lost to its courts when with the father's consent the Superior Court at Los Angeles gave the sole custody of these children to the mother and itself consented that she fix their residence in Montana, or elsewhere outside of California, as she chose. She did not violate the California judgment or breach her agreement of April 29, 1944, with the father when she brought the children to Montana. This circumstance alone suffices to make the citation of State ex rel. Nipp v. District Court, 46 Mont. 425, 128 Pac. 590, and Hersey v. Hersey, 271 Mass. 545, 171 N. E. 815, 70 A. L. R. 518, pointless. This distinction is plainly drawn by the Massachusetts court in the Hersey Case, and is the nub of its decision there upon the question of jurisdiction presented. See 271 Mass. at page 551, 171 N. E. 818. Because this authority and others of like kind are upon their facts not applicable to our problem,

we do not need to inquire further whether they reach a sound conclusion in point of law. Clearly they are not to be followed as precedents at bar. Nothing in Pearce v. Pearce, 30 Mont. 269, 76 Pac. 289, or State ex rel. Giroux v. Giroux, supra, or Kane v. Kane, 53 Mont. 519, 165 Pac. 457, is to the contrary.

Undoubtedly when a suit involving the custody of a minor is brought in the state of his domicil and process is personally served upon the person there vested with his custody, jurisdiction attaches to determine any question touching that custody which may be raised. This was the case here in California which led to the interlocutory judgment of May 18, 1944, and the final judgment entered a year later. Probably that jurisdiction could not have been defeated by taking the children out of California before this final judgment was entered. Talbott v. Talbott, supra; Maloney v. Maloney, 67 Cal. App. (2d) 278, 154 Pac. (2d) 426. But with that judgment that suit ended. True these judgments were subject to modification under Cal. Civ. Code, section 138, as in Montana a similar judgment may be modified under R. C. M. 1947, section 21-138.

Yet to effect such a modification it is requisite that the parties be again brought before the court. This is tacitly conceded by the father's counsel at bar; for in October 1954 when the father moved the California Court to modify the original judgments his attorney served the mother in Montana to bring her again before that Court. Thereby the father initiated an entirely new proceeding in the old divorce suit, which had been closed in 1945. Unquestionably in that new proceeding the California Court reacquired jurisdiction over the mother in November 1954 when she appeared and litigated her rights before it. But that was not enough.

It was necessary also that the Superior Court have before it the subject matter. This the California Supreme Court itself has made very clear in its own opinion in Sampsell v. Superior Court, supra. This was as necessary to the jurisdiction of the Superior Court as that notice be given the mother, or that she appear personally. But the subject matter or *res* was at that

time with these children at their domicil in Montana. The California court was powerless therefore to act upon it. Again the authorities cited earlier in this opinion sustain the conclusion stated.

The view to the contrary, upon which counsel for the father rely, that the jurisdiction of the California court follows these children even under the facts of this case after their removal from that state does find support, however, in Maine in the *dictum* of Stetson v. Stetson, 80 Me. 483, 15 A. 60; in Missouri in a like *dictum* in Meredith v. Krauthoff, 191 Mo. App. 149, 187, 177 S. W. 1112, and perhaps in a few other states which have followed the Stetson case. But these decisions are in the decided minority, and of little force today for the reasons which we have already detailed. In many of the cases the language used is again nothing but *dicta* with little or no support in the facts. These holdings are against the present weight of authority and out of step wth the trend of the law now at this point. This is clearly pointed out in Beale, Conflict of Laws, supra, at pages 718, 719. We believe their reasoning is unsound. Accordingly we decline to accept them as persuasive precedents.

It follows then that the order of the California Court of November 23, 1954, does not come within the protection of the full faith and credit clause of the Constitution of the United States, U. S. Const. Art. IV, section 1, because it was made without jurisdiction. In re Alderman, supra; McAdams v. McFerron, supra; Gilman v. Morgan, supra; State ex rel. Larson v. Larson, supra; Griffin v. Griffin, 95 Or. 78, 187 Pac. 598. Compare Talbot v. Talbot, supra, 120 Mont. at page 175, 181 Pac. (2d) at page 152. It will accordingly be given no effect in Montana.

But the courts of Montana are, nevertheless, themselves open to the father where, in the state of his children's domicil, he may be heard. Nothing said in this opinion is to be understood as foreclosing him from applying to the proper district court of this state for an order touching his children's custody. But upon this record in this court he is entitled to no relief.

The writ of habeas corpus issued in these proceedings is discharged without prejudice; and the children, Max and Karen Enke, are remanded to the custody of the respondent, Jean S. Baucus.

MR. JUSTICES ANGSTMAN and ANDERSON, concur.

MR. CHIEF JUSTICE ADAIR: (concurring in part and dissenting in part).

I concur in the denial of the mother's motion seeking to quash the writ of habeas corpus issued herein and seeking to dismiss the proceeding in this court and am in accord with the reasons stated in the majority opinion for such denial.

However, as to those portions of the majority opinion which conclude, determine and adjudge invalid, null and void the modification order and judgment of the Superior Court of Los Angeles County, California, dated November 23, 1954, and entered November 26, 1954, and as to those portions of the majority opinion which purport to declare and construe the law and interpret the principles and decisions in such fashion as to justify this court's action in declining to give either credit or effect to the modification made by the California Court of the custodial provisions of its own judgment, I respectfully dissent.

Stephen Enke and Jean Sheriff Enke were husband and wife. As issue of their marriage, a son, Max Sieben Enke, was born December 11, 1941, and a daughter, Karen Jean Enke, was born January 13, 1944.

After the birth of her daughter, the mother, Jean Sheriff Enke, commenced in the Superior Court of Los Angeles County, California, a suit for divorce against her husband Stephen Enke. The cause is entitled "Jean S. Enke, Plaintiff, vs. Stephen Enke, Defendant" and bears Superior Court No. D 258239.

To enable it to enter a valid decree or judgment in the action the court must have jurisdiction of both the subject matter and the parties to the suit.

*Jurisdiction over Subject Matter.* The law of California con-

fers full jurisdiction of actions for divorce on the superior courts of that state. Grannis v. Superior Court, 146 Cal. 245, 79 Pac. 891, 106 Am. St. Rep. 23; Cooney v. Cooney, 25 Cal. (2d) 202, 153 Pac. (2d) 334.

Section 128 of the California Civil Code, in part, provides: "A divorce must not be granted unless *the plaintiff* has been a resident of the state one year, and of the county in which the action is brought three months, next proceeding the commencement of the action * * *." Emphasis supplied.

It is also the law of California that no divorce can be there had unless the prescribed facts of residence of the plaintiff appear and the proof thereof is a prerequisite to the granting of the divorce. A mere admission in the pleadings of such residence of the plaintiff is insufficient. Coleman v. Coleman, 23 Cal. App. 423, 138 Pac. 362; Eriksen v. Eriksen, 57 Cal. App. (2d) 532, 134 Pac. (2d) 825; Ungemach v. Ungemach, 61 Cal. App. (2d) 29, 142 Pac. (2d) 99, 102.

At the time the plaintiff filed her complaint in the action and for a number of years next preceding the commencement of the suit the plaintiff wife and the defendant husband were both bona fide residents of the State of California, actually living in the County of Los Angeles in such state wherein they had kept and maintained their family home.

Thus did the Superior Court of Los Angeles County, California, have and acquire jurisdiction over the subject matter of the suit for divorce so commenced.

*Jurisdiction over Plaintiff.* By voluntarily coming into the Superior Court of Los Angeles County, California, with her marital troubles and by filing therein appropriate pleadings invoking the exercise of that court's powers to render her her rights under the law of California, the plaintiff wife submitted herself and the cause of action to the ultimate determination of such court for all purposes within the scope of her pleadings and thereby did the court acquire jurisdiction over the plaintiff Jean S. Enke. 21 C. J. S., Courts, section 83, at page 122.

*Jurisdiction over Defendant.* The defendant Stephen Enke

was duly served with process issued out of said Superior Court of Los Angeles County in the action and thereby did that court acquire jurisdiction over his person. 21 C. J. S., Courts, section 83, subd. b, page 123.

*Jurisdiction to Award Custody.* Here the plaintiff wife was asking that the marriage bond be severed, that the parties be made single again and that the family, so far as it is one of the social units of the state, be destroyed.

An action for divorce is peculiar in its nature, in that, besides the interests of the parties involved, the public is also interested and the divorce court has before it interests to be adjudged and determined separate and distinct from those of the parties and these may not be ignored or disregarded. Bordeaux v. Bordeaux, 32 Mont. 159 at page 165, 80 Pac. 6 at page 8.

It follows that the state is deemed to be vitally interested in every divorce proceeding and when parents are divorced the welfare of their minor children becomes the grave responsibility of the trial court for the determination of the custody of such children is left to the sound and broad discretion of the court, the paramount question, irrespective of the feelings of the parents or others, being: What is best for the children and for their happiness and welfare?

The authority of the trial court over the minor children of parents involved in a divorce action may rest upon either or both of two theories, namely: (1) The interest of the state as *parens patriae* and (2) the personal rights of the parents as between themselves.

In the United States the state, as sovereign and not the general government, is *parens patriae* and as such has power of guardianship over persons under disabilities such as minors and insane and incompetent persons. It has been held that in an action for divorce involving the parents of minor children the trial court must keep in mind that the right of the state, whose wards the infant children become, rises above and is superior to that of the parents. Wadleigh v. Newhall, C. C. Cal., 136 F. 941.

The statutes authorizing the California Courts to grant divorces expressly confer upon the court in which an action for divorce is commenced broad powers to make orders for the support, care and custody of the minor children of the parties upon granting a divorce, with express *continuing power* to modify the provisions of the so-called "final" decree as to such matters *at any time during the minority of the children of. the marriage.*

Section 138 of the California Civil Code, so far as is here pertinent, provides: "In actions for divorce * * * the court may, during the pendency of the action, or at the final hearing or at any time thereafter during. the minority of any of the children of the marriage, make such order for the custody of such minor children as may seem necessary or proper and may at any time modify or vacate the same."

Jurisdiction over the infant children of the marriage attached *at the time· the plaintiff mother filed her complaint in the divorce action.*

*At the time the plaintiff commenced her action for divorce* both infant children of the parties were actually and physically present in the County of Los Angeles in the State of California then and there in the custody of and living with their parents.

The law is as declared in the well considered and much cited case of Maloney v. Maloney, 67 Cal. App. (2d) ·278 at page 280, ·154 Pac. (2d) 426, 427, wherein the court said:

"*When the action was commenced by plaintiff the children were in California under the joint control of their parents.* By his very act in commencing the action plaintiff submitted not only himself to the jurisdiction of the court but also the res, that is, his status as husband and as father. The court thereafter had the power to enter an effective judgment for him or against him, *in personam,* relative to any substantial allegation of the pleadings. Neither the mere physical departure of himself nor that of the children from California in the least altered the jurisdiction of the court completely to determine the controversy which he had lithely initiated. State v. Rhoades, 29

Wash. 61, 69 Pac. 389. *Plaintiff cannot question the jurisdiction which by his own act he conferred. Although the children are beyond the territorial limits of California, they are still under the jurisdiction of the court below* (Hersey v. Hersey, 271 Mass. 545, 171 N. E. 815, 818, 70 A. L. R. 518,) *which attached at the time the suit was filed.''* Emphasis supplied.

Civil actions in the courts of California are commenced by filing a complaint. California Code of Civil Procedure, sections 405, 350.

*From the moment the plaintiff mother filed her complaint* in the divorce action the California Court was fully empowered to make such orders for the custody of the minor children as may seem necessary or proper.

''Here the divorce proceedings gave the state, through its courts, the right to determine the custody of the children.'' Stewart v. Stewart, 41 Cal. (2d) 447, 260 Pac. (2d) 44, 48.

Thus did the Superior Court of Los Angeles County acquire and have jurisdiction to award the custody of the infant children with *continuing jurisdiction* ''during the minority of any of the children'', to make such further orders or modifications as may seem necessary or proper. Section 138, Cal. Civil Code.

*Interlocutory Decree.* On May 18, 1944, after a hearing that day had before the above Superior Court at which the plaintiff, Jean S. Enke, was represented by her counsel Alex W. Davis, Esq., the court rendered and caused to be filed in said divorce action No. D258239, an interlocutory decree wherein, omitting its formal parts, the court found and adjudged:

''This cause came on to be heard before Honorable Kurtz Kauffman, Judge presiding in Department 29, on the 18th day of May, 1944, Alex W. Davis appearing as attorney for plaintiff, and it appearing that defendant was duly served with process and has not appeared or answered the complaint, and that the default of defendant has been entered; and evidence having been introduced on the part of plaintiff, and said cause having been duly submitted to the Court for decision;

''It is adjudged that plaintiff is entitled to a divorce from

defendant; that when one year shall have expired after the entry of this interlocutory judgment a final judgment dissolving the marriage between plaintiff and defendant be entered, and at that time.the Court shall grant such other and further relief as may be necessary to complete disposition of this action.

"It is further ordered and adjudged that Plaintiff shall have the sole custody of the minor children, Max Sieben Enke, aged 2½ years, and Karen Jean Enke, aged 3½ months, and the right to determine their place of residence, and that Defendant shall have the right to correspond with the said children, and the right to visit them occasionally at the place of their residence at reasonable times and in reasonable manner after making arrangements with Plaintiff for such visits, and this court reserves the right to make appropriate orders for the support of the children.

"The clerk is directed to enter this decree.

"Done in open Court this 18 day of May, 1944.

"/s/ Kurtz Kauffman, Judge.

"Notice—caution. This is not a Judgment of Divorce. The parties are still husband and wife, and will be such until a final judgment of Divorce is entered after one year from the entry of this Interlocutory Judgment. The final Judgment will not be entered unless requested by one of the parties."

An interlocutory decree of divorce is, by the terms of the statutes (sections 131, 131.5 and 132, California Civil Code) provisional and temporary only. Llewellyn Iron Works v. Industrial Acc. Comm., 191 Cal. 28, 214 Pac. 846; London Guaranty & Accident Co. v. Industrial Acc. Comm., 181 Cal. 460, 184 Pac. 864.

The interlocutory decree being a mere declaration that one of the parties is entitled to divorce does not dissolve the marriage, Corbett v. Corbett, 113 Cal. App. 595, 298 Pac. 819; Remley v. Remley, 49 Cal. App. 489, 193 Pac. 604; Radich v. Radich, 64 Cal. App. 605, 222 Pac. 182, and the parties continue to occupy the relationship of husband and wife until the

"final" judgment of divorce is entered and the appeal therefrom determined or until the time allowed by statute for taking an appeal has expired with no appeal taken. Vickers v. State Bar of Cal., 32 Cal. (2d) 247, 196 Pac. (2d) 10; Paulus v. Bauder, 106 Cal. App. (2d) 589, 235 Pac. (2d) 422; In re Fulton's Estate, 8 Cal. App. (2d) 423, 48 Pac. (2d) 120; Green v. Green, 66 Cal. App. (2d) 50, 151 Pac. (2d) 679; Borg v. Borg, 25 Cal. App. (2d) 25, 76 Pac. (2d) 218; Brown v. Brown, 170 Cal. 1, 147 Pac. 1168.

It follows that the interlocutory decree of May 18, 1944, did not dissolve the marriage of Stephen Enke and Jean S. Enke. On the contrary they remained husband and wife at least until such time as the "final" judgment of divorce should be entered in the cause and the time allowed for taking an appeal shall have expired with no appeal taken and both parties to the suit were so notified and warned.

Within a day or two after the entry, on May 18, 1944, of the above interlocutory decree the plaintiff Jean S. Enke, accompanied by the two infant children of the marriage, left the State of California and removed to Lewis and Clark County, in the State of Montana where all three have since lived and made their home. Compare Smith v. Ansley, Tex. Civ. App., 257 S. W. (2d) 156.

*Final Judgment.* On May 22, 1945, at the request of plaintiff's counsel of record there was filed and entered in the judgment book in the Superior Court of Los Angeles County, California a "final" judgment of divorce in said cause No. D258239 which, omitting the formal parts, recites and adjudges:

"In this cause an interlocutory judgment was entered on the 18th day of May, 1944, adjudging that plaintiff was entitled to a divorce from defendant, and more than one year having elapsed, and no appeal having been taken from said judgment, and no motion for a new trial having been granted and the action not having been dismissed;

"Now, upon the Court's own motion, it is adjudged that plaintiff be and is granted a final judgment of divorce from defend-

ant and that the bonds of matrimony between plaintiff and defendant be, and the same are dissolved.

"It is further ordered and adjudged that wherein said interlocutory judgment makes any provision for alimony or the custody and support of children, said provision be and the same is hereby made binding on the parties affected thereby the same as if herein set forth in full, and that wherein said interlocutory judgment relates to the property of the parties hereto, said property be and the same is hereby assigned in accordance with the terms thereof to the parties therein declared to be entitled thereto.

"Done in open court this 21st day of May, 1945.

"/s/ Wm. H. Baird Judge

"Filed at request of Murphey and Davis
"Address 514 Pacific Mutual Bldg.
 "Los Angeles 14, California
"Attorney for Plaintiff by Alex W. Davis.
"This judgment is not effective until entered in judgment book by clerk."

In the spring of 1947 the plaintiff Jean S. Enke and one John Baucus were married. Of their union a son, John Frederick Baucus was born September 19, 1949, who resides with his parents in Lewis and Clark County, Montana.

In the fall of 1951 the defendant Stephen Enke married one Fay Enke, who, by a previous marriage has a daguhter now aged seventeen years and a son now aged eleven years, both of whom reside in the family home of Mr. and Mrs. Stephen Enke at Pacific Palisades in the State of California.

Thus have both the plaintiff Jean S. Enke and the defendant Stephen Enke placed considerable faith and reliance in the validity of the final judgment of divorce so entered in the Superior Court of Los Angeles County, California, on May 22, 1945.

*Affidavits by Plaintiff.* In support of his petition for a writ of habeas corpus the petitioner filed in this court and offered, as his exhibits "A" and "B", two certain affidavits made by

the plaintiff mother in Montana and both sworn to before E. G. Toomey, Esq., a notary public for the State of Montana and also an attorney at law and the counsel of record for the mother in this proceeding before this court. Both affidavits were offered in evidence and admitted as the mother's testimony at the hearing held November 23, 1954, in the Superior Court of Los Angeles County, California, in the proceeding, then pending and that day heard, on the father's application for a modification of the decree and judgment in said cause No. D258239, as is shown in the authenticated copy of the California Court's finding of fact and order of modification therein filed and entered on November 26, 1954, and quoted above. .

*Affidavit of October 22, 1954.* The first of the above affidavits was made and sworn to by the plaintiff mother on October 22, 1954, and in part recites:

"I am the same person as Jean. S. Enke, and as such I was the Plaintiff in the * * * divorce action, numbered 258239, in the Superior Court of the State of California, in and for the County of Los Angeles. The defendant in said action was at the commencement thereof my husband * * *

"On October 14, 1954, there was delivered to our home * * * in Helena, Montana, a piece of registered mail * * * receipted for by a maid * * * and delivered to me the same day. The envelope contained a typewritten carbon copy of Order to Show Cause and Affidavit In Re Modification of Child Custody Order of May 18, 1944, dated October 1st, 1954, by Honorable Elmer D. Doyle, Judge of the above entitled Superior Court and * * * an Affidavit of Stephen Enke * * * and * * * an original letter addressed by * * * Lyman A. Garber, an attorney at law at 9437 Santa Monica Boulevard, Beverly Hills, California, to me, as 'Mrs. Jean Baucus' * * * at * * * Helena, Montana, wherein Lyman A. Garber stated:

" 'This letter constitutes a formal written demand upon you to appoint another attorney or to appear in person.'

"In the said divorce action I was represented by the Law Firm of Murphey and Davis of Los Angeles, California, both mem-

bers of which Law Firm have died since the entry of Final Judgment of Divorce. I have appointed Allan G. Ritter, an Attorney at Law, of 3946 Wilshire Boulevard, Los Angeles 5, California, whose office telephone number is Dunkirk 45380, to represent me by all proper and legitimate resistance to the proposed modification of Child Custody Order, as respects the provision for custody of children currently in force. * * *

"I oppose the proposed modification of custody provision and deny that the modification is for the best interest of said children, and I assert that the welfare, stability and best interests of said children requires that no modification of the custody provisions of the decree of May 18th, 1944, should be had.

"I note that in * * * the Affidavit of Stephen Enke, it is asserted, with respect to Affiant;

" 'Their mother, who expected to reside here after a vacation in Helena, Montana, is a permanent resident there.'

"I deny that I expected to reside in the State of California after the entry of the Interlocutory Decree of Divorce. * * *

"Within a few days after the entry of Interlocutory Decree on May 18, 1944, Affiant returned to Helena, Montana, with the said children, and ever since that time has resided in Helena, Montana, with the said children. * * *"

*Affidavit of November 17, 1954.* In her second affidavit made and sworn to on November 17, 1954, the plaintiff mother, inter alia, deposed:

"I am the same Jean S. Baucus who heretofore made Affidavit in this matter, dated October 22, 1954.

"On November 4 I received from my Attorney herein, Mr. A. G. Ritter, a second and further 'Order to Show Cause and Affidavit In Re Modification of Child Custody Order of May 18, 1944', wherein Stephen Enke, defendant above named is the affiant and wherein I am directed to show cause in the above-entitled Court at 9:30 o'clock A. M., on November 23, 1954, why said Child Custody Order of May 18, 1944 should not be further modified, that is, modified in two (2) particulars, in *addition* to the modification as requested by Affidavit of said

Stephen Enke, dated September ...., 1954, as said Affidavit is found with the first Order to Show Cause issued under date of October 1, 1954. * * *

"Affiant, mother of said children, resists the additional modifications requested by Stephen Enke and each thereof, Affiant continues to resist, also the modification requested by the defendant Stephen Enke in his Affidavit of September ...., 1954, upon which Order to Show Cause dated October 1, 1954, issued herein, as aforesaid."

*Modification Order.* In a supplementary proceeding by the defendant Stephen Enke in the Superior Court of Los Angeles County, California, in said cause No. D258239 wherein the plaintiff Jean S. Enke (then and now Jean S. Baucus) was represented by her counsel Allan G. Ritter, Esq., and the defendant Stephen Enke was represented by his counsel Lyman A. Garber, Esq., written findings of fact and an order of modification were filed November 26, 1954, which, omitting the formal parts, recite:

"No. D-258239. Findings of Fact by Court Commissioner and Order. O.S.C. Re Modification.

"By direction of the court the matter of taking proof and reporting conclusions of fact relative to the O.S.C. Re Modification came on regularly for hearing before the undersigned court commissioner on Nov. 23, 1954, the following named witnesses were sworn and examined: defendant, Fay Enke, Prynce Hopkins.

"The evidence being concluded and the matter submitted, the facts and special findings as to parties, income and resources are found as follows:

"By Interlocutory Judgment dated May 18, 1944, the custody of the minor children, Max Sieben Enke and Karen Jean Enke, was granted to the plaintiff together with the right to determine their place of residence. The defendant was granted the right to correspond with said children and to visit them occasionally at the place of their residence at reasonable times and in a reasonable manner after making arrangements with the

plaintiff before such visits. It was stipulated that the affidavit of the defendant be received in evidence, subject to additional direct and cross-examination. It was stipulated that the affidavits (2) of the plaintiff be received in evidence as her testimony. The defendant waives his right of cross-examination thereon. At the time the Interlocutory Judgment was entered the older child, a boy, was aged 2½ years, and the younger child, a girl, was aged 3½ months; they are now aged 12 and 10. The defendant at present is a Research Scientist for the Air Force. At the time of the Interlocutory Judgment the plaintiff, with the 2 minor children, moved to Helena, Montana, and has resided in that general area since that time. The plaintiff has remarried a man by the name of *Bauses* and has a child as a result of said marriage. From 1944 to 1947 the defendant requested permission of the plaintiff to see the minor children but was refused permission. From 1948 to September 15, 1951 the defendant made no particular effort. Thereafter the defendant remarried; his wife has 2 children, a girl aged 16 and a boy aged 12, by a previous marriage, and at present are living in Pacific Palisades near the coast. The children of the parties hereto have been registered in school in Montana under the name of *Bauses* instead of their true name, Enke. The defendant desires the right of having the physical custody of the children for a period of time during their summer vacations. In 1954 the defendant saw the children briefly on 2 occasions in Montana, once on his way to Europe and second time upon his return. Each of these visits was brief and not particularly satisfactory to either the defendant or the children. Over the years since the Interlocutory Judgment, the defendant has communicated with the children from time to time and on various occasions has sent them gifts. The defendant attends church on occasion and was married the last time in a church. His present wife is an American citizen and she would be happy to have the children visit them in their home. The best interest of the minor children require that they should have the opportunity to become better acquainted with and to know their father. Both the plaintiff

and defendant are fit and proper persons to have the physical custody of the minor children. There is a material change of circumstances in that the children are older than at the time of the Interlocutory Judgment herein.

"Recommendation

"Referred to Commissioner Oliver for findings and recommendation

"The Interlocutory Judgment is modified in the following particulars only: The defendant may have the physical custody of the minor children for the month of July of each year, beginning July, 1955; the defendant is ordered to provide the necessary transportation to and from the home of the plaintiff. The plaintiff is restrained from registering the minor children in school or elsewhere in any name other than their natural surname of Enke. Notice waived 259A CCP.

"Dated: Nov. 23, 1954

"So ordered [Signed by Judge and Court Commissioner]."

The above order so modifying the visitation and custodial provisions of the interlocutory decree of May 18, 1944, and the final judgment of divorce entered May 22, 1945, was appealable. Had the plaintiff mother deemed herself aggrieved thereby she could and she ought to have taken an appeal therefrom. This she did not do and the time allowed by statute for taking such appeal was allowed to pass and expire with no appeal taken.

In Ruberts v. Ruberts, 1955, 4 Ill. App. (2d) 134, 123 N. E. (2d) 737, at page 738, it is said:

"The order * * * relates only to the subject of visitation, not custody, and it appears that that was the only modification effected by the Trial Court, as that Court continued the full care, custody, and control of the children in the mother. It is noted that the Order of the Trial Court gives the plaintiff the right of visitation of the children during the time when they would be in the home of the defendant. We do not believe that the order allowing the father to have the children in his home for a month in the Summers and two days in each October and

March creates a change in custody rather than a modification of the visitation privilege * * *.

"We do not believe that under the particular facts in the case before us the Order of the Trial Court materially abridged the plaintiff's rights to the custody of the children. Certainly the Chancellor should be allowed broad discretion when the question of altering visitation privileges is involved: Wade v. Wade, 345 Ill. App. 170, 102 N. E. (2d) 356."

At the hearing held before the court commissioner on November 23, 1954, the mother and her interests were there fully represented by her attorney Allan G. Ritter, Esq., who pursuant to stipulation with defendant's attorney Lyman A. Garber, Esq., introduced in evidence as plaintiff's traverse and testimony at the hearing, the two affidavits theretofore made by plaintiff.

Thus did the plaintiff make a general appearance at the hearing and in the proceedings which resulted in the modification order and thereby did she voluntarily submit to the jurisdiction of said Superior Court in such proceedings and she stands bound by its determination and order. There having been no appeal from the order of modification "it is binding not only upon the parties to the action but upon the courts as well." Benson v. Benson, 121 Mont. 439 at page 444, 193 Pac. (2d) 827, 830.

It has been held that a divorce court may determine the matter of custody of a child who is not within the territorial jurisdiction of the court, and who is not residing nor domiciled within the state, if the person who has actual custody of the child is before the court either by personal service of process or by general entry of appearance. Beckman v. Beckman, Mo. App., 211 S. W. (2d) 536, at page 540.

The doctrine of comity between the states of the Union requires that a judgment granting a divorce and awarding custody of minor children, including the lawful modifications thereof, made by a court of one state shall be conclusive in the jurisdiction of the other states where, as here, the court granting

the decree and the modification order had acquired jurisdiction over the subject matter and over the person of both the plaintiff and the defendant.

Upon the entry of the decree awarding their custody the minor children became wards of the Superior Court of Los Angeles County and thereafter, by the express provisions of Section 138 of the California Civil Code, that Court was empowered to give such further direction for their custody and care during their minority as may seem necessary or proper. Compare Benson v. Benson, supra.

*Habeas Corpus.* In this original proceeding in habeas corpus Stephen Enke, the father, now and for many years past a citizen and bona fide resident of the State of California, by petition filed July 2, 1955, has invoked the original jurisdiction of this court to obtain visiting rights and privileges, including temporary custody during the month of July of his son Max Sieben Enke and his daughter Karen Jean Enke, both being minor children of school age.

The father grounds his petition and right to the writ upon the modification order and judgment of the California Court dated November 23, 1954, and entered November 26, 1954, providing that the father "may have the physical custody of the minor children for the month of July each year, beginning July, 1955" and that he shall provide the necessary transportation to and from the home of the mother.

The father's petition for the writ, *inter alia,* shows: That the father had been in communication with the mother and with her attorney in Montana in an attempt to effect the visitation specified for July 1955; that the mother's attorney had given indication that the mother was intending to abide by the modification order and judgment of the California Court; that the father delivered to the children's mother air line tickets on Western Airlines from Helena, Montana, to Los Angeles for the flight leaving Helena airport at 7:00 o'clock a. m. on July 1, 1955; that no confirmation of space on such flight was made by the children's mother or anyone on her behalf; that such flight

departed Helena and the children were not aboard the plane; that the mother has not obeyed the aforesaid modification order and judgment; that she does not intend to obey same; that unless ordered by the courts of Montana she intends to and will further hold the children illegally and in violation of the said modification order and judgment; that the mother is unlawfully restraining the children and that she is unlawfully withholding their physical custody from the father.

At the time of filing his petition for the writ of habeas corpus the father produced and filed in this court properly authenticated copies of (1) the interlocutory decree, (2) the final judgment of divorce and (3) the findings of fact and order of modification of the judgment, all given and entered in said action for divorce so commenced and prosecuted by the plaintiff mother, Jean S. Enke, in the Superior Court of Los Angeles County, California, against the defendant husband and father, Stephen Enke, being No. D258239 therein.

*Jurisdiction Acquired and Exercised.* All parties concede that at the time the interlocutory decree was entered (May 18, 1944) and the final judgment of divorce was entered (May 22, 1945) the California Court then had full and complete jurisdiction over both the subject matter and the parties; that it then had ample authority and power to give and enter both the interlocutory decree and the final judgment of divorce and that each was and is a valid and binding adjudication.

Now what happened to the *continuing jurisdiction* of the California Court, section 138, Cal. Civ. Code; Foster v. Foster, 8 Cal. (2d) 719, 68 Pac. (2d) 719, at page 722; Maloney v. Maloney, 67 Cal. App. (2d) 278, 279, 154 Pac. (2d) 426; Falconer v. Falconer, 95 Cal. App. (2d) 4, 212 Pac. (2d) 5, at page 6 so acquired and exercised by such Court?

"When a plaintiff invokes the jurisdiction of a court of this state to determine the question of custody * * * of his children he may not thereafter deny that the court has jurisdiction to make an order upon the subject presented by his own pleadings." Falconer v. Falconer, supra.

*Surrender of Jursdiction.* The majority opinion recites that on April 29, 1944 (being but nineteen days prior to the entry of the interlocutory decree of May 18, 1944), the father and mother came to the parting of their ways and as of that date they executed a "settlement agreement" wherein they mutually agreed that the mother shall have the sole custody of the two infants,—the daughter then aged three months and the son then aged two years and that, "Subsequently the mother sued for divorce in the Superior Court of Los Angeles County, California * * *."

The majority opinion says that the *original jurisdiction* which necessarily was first acquired and then on May 18, 1944, and again on May 22, 1945, exercised by the California trial court in its divorce action No. D258239, "was voluntarily surrendered by California and accordingly lost to its courts when with the father's consent the Superior Court at Los Angeles gave the sole custody of these children to the mother and itself consented that she fix their residence in Montana, or elsewhere outside of California, as she chose."

Thus does the majority opinion conclude that by executing the "settlement agreement" on April 29, 1944, and before the mother had even commenced her suit, the father authorized California to voluntarily surrender the original jurisdiction which its Superior Court in Los Angeles County was about to acquire, if and when the mother should commence her action, through signing such "settlement agreement" and that the subsequently acquired jurisdiction over the infant children of the parties was voluntarily surrendered by California and accordingly lost to its Courts before such jurisdiction had been either acquired or invoked.

Of course such is not the law of either California or Montana.

*In California.* The rights of the mother respecting the custody of her minor children after her divorce "were derived solely" from the trial court's orders made in the divorce action, Watkins v. Clemmer, 129 Cal. App. 567, 19 Pac. (2d) 303, at page 307, and not from the so-called "settlement agree-

ment'' entered into with the father prior to the time she filed her suit for divorce. Also see McCoy v. McCoy, 38 Cal. App. (2d) 637, 102 Pac. (2d) 384; Lucachevitch v. Lucachevitch, 69 Cal. App. (2d) 478, 159 Pac. (2d) 688; Puckett v. Puckett, 21 Cal. (2d) 833, 136 Pac. (2d) 1; In re Arkle's Estate, 93 Cal. App. 404, 269 Pac. 689; Van der Vliet v. Van der Vliet, 200 Cal. 721, 254 Pac. 945; Anderson v. Anderson, 56 Cal. App. 87, 204 Pac. 426.

*In Montana.* In Kane v. Kane, 53 Mont. 519, at pages 524, 526, 165 Pac. 457, 459, this court speaking through Mr. Justice Holloway said:

''Though the separation agreement is binding upon the parties to it and regulates their rights and obligations *inter sese,* it is not binding upon either the child or the court. If its provisions for the care of the child are inadequate or become inadequate, the father may be called upon to supplement them by further contributions, notwithstanding the agreement by the mother releasing him from further costs or expenses. The child is the ward of the court, and, even if the parents agreed that the father should not enjoy the privilege of seeing his offspring, the court may nevertheless authorize him to visit it if the interests of the child will be thereby promoted. * * *

''The conditions under which the father's visits may be made, the time, place, and duration of them, his conduct during such visits, and the extent to which he may have the child in his custody are all proper subjects for regulation by the court. It cannot be said that by the modification sought, the father gains a distinct advantage without any concomitant burden. When he submitted to the jurisdiction of the court, he was there for any proper order the court might make, and if the court requires him, as a condition precedent to his right to visit his child, that he make further reasonable contributions to its support, he will not be in any position to complain. * * *

''Unless it can be said with reasonable certainty that the father is morally unfit to associate with the child, the dictates of humanity call for such regulations as will permit him to see

his own offspring. 'It must be borne in mind that the tie between parent and child is one of the most binding in human life, one which the law of nature itself has established. No legislation, no judicial interpretation of legislation should lightly disregard the reciprocal duties of this relationship.' State ex rel, Giroux v. Giroux, 19 Mont. 149, 47 Pac. 798." To the same effect see State ex rel. Floch v. District Court, 107 Mont. 185 at pages 190, 191, 81 Pac. (2d) 692.

In Pearce v. Pearce, 30 Mont. 269 at pages 271, 272, 76 Pac. 289, 290, this court said:

"The point is made by the appellant that the said contract by which it was agreed, under the circumstances narrated, that the husband should have the custody of the child, is void as against public policy. It is not necessary to discuss that question. Section 192 of the Civil Code [1895, now section 21-138, Rev. Codes of Montana of 1947] is as follows: 'In an action for divorce the court or judge may, before or after judgment, give such direction for the custody, care and education of the children of the marriage as may seem necessary or proper, and may at any time vacate or modify the same.' *We cannot understand how this language can be misunderstood, or how two persons can form different opinions as to what it means.* The marriage laws are intended to establish families, and to protect children resulting from the conjugal union. When parents have unfortunate differences, and invoke the law of divorce for the purpose of separation, the prime duty of the court is to see that the infant children are protected; and *if the parents do not,* by proper petition, *ask the court to make a proper order for the care and protection of their helpless offspring, the court should and may of its own motion inquire into the facts and make the necessary order, and must do so when moved by either party, whether such party was in default, or not, in the suit, or is the guilty party.* If it makes a mistake in the first instance, it may and should remedy the same, upon a proper showing, as soon thereafter as possible; and the law, in its beneficence, and with a tender care for the

infants, has provided the means set forth in section 192, quoted above.'' Emphasis supplied.

In State ex rel. Graveley v. District Court, 119 Mont. 276 at pages 283, 284, 174 Pac. (2d) 565, 568, this court speaking through Mr. Justice Angstman said:

''The fact that the children would, for all practical purposes, be denied the companionship and advice of their father is a circumstance to be taken into consideration in weighing the question as to what is best for them. 'The family relation and love between a child and its parents constitutes one of the holiest impulses toward good conduct and correct living. It is more than wealth, honors, or power, and we believe that courts should be loath to take any steps, or make any orders, which will prevent the play of this powerful impulse to good action, on the part of the parents for their offspring.' Futch v. Futch, Tex. Civ. App., 299 S. W. 289, 292.

''This is not only an important right of the father but a right which affects the welfare of his boys and should not be taken away except for reasons touching the welfare of the boys. Turner v. Turner, 86 N. H. 463, 169 A. 873.''

In Kelly v. Kelly, 117 Mont. 239, at pages 247, 248, 157 Pac. (2d) 780, 784, in his dissenting opinion, Mr. Justice Angstman said:

''The trial court, it should be remembered, was in a better situation to determine what is best for the children than are we. The district judge saw Mr. Kelly and his present wife and the other witnesses, and heard them testify. * * * To the credit of Mr. Kelly it should be said that he has visited the children three times since going to Seattle and before that he visited them 'every couple of months' but was not permitted by Mrs. Davis to take the children to town or off the place.

''I am not prepared to say that Judge Besancon abused his discretion in awarding the custody of these boys to Mr. Kelly. * * *

''We should be careful not to permit our disgust for the conduct of the father in the past to work to the permanent detri-

ment of the children. I should say in passing that the fact that the divorce was granted for fault of the husband does not necessarily bar him from the right to the custody of the children. Boles v. Boles, 60 Mont. 411, 199 Pac. 912.''

''*Suit Ended.*'' Conceding that when it gave and entered the interlocutory decree (May 18, 1944) and the final judgment (May 22, 1945) in its divorce action No. D258239, the Superior Court of Los Angeles County had theretofore acquired the requisite original jurisdiction to render a valid decree and judgment, the majority opinion then says, ''Probably that jurisdiction could not have been defeated by taking the children out of California before the final judgment was entered. * * * *But with that judgment that suit ended.*''

Not at all.

The reason:

There can be no final judgment as to infant children, in a divorce case. Keith v. Keith, 270 Ky. 655, 110 S. W. (2d) 424, at page 427; White v. Shalit, 136 Me. 65, 1 A. (2d) 765, at page 767.

The entry of the so-called ''final'' judgment in divorce suit No. D258239 did not end such suit because of the *continuing jurisdiction* expressly conferred upon the Superior Court by the California statute which provides: ''In actions for divorce * * * *the court may* * * * at the final hearing or *at any time thereafter during the minority of any of the children of the marriage,* make such order for the custody of such minor children as may seem necessary or proper *and may at any time modify or vacate the same.*'' Emphasis supplied. Section 138, Cal. Civ. Code.

''But * * * there can be no doubt that once jurisdiction attaches to grant a divorce and award custody of the minor children of the marriage, our statute provides that *such jurisdiction is continuing and the power to amend, modify or annul an award of custody* as existing conditions demand *ever after remains.*'' Emphasis supplied. Kelly v. Kelly, 75 Cal. App. (2d) 408, 171 Pac. (2d) 95, at page 99. To like effect see Noon v. Noon, 84 Cal. App. (2d) 374, 191 Pac. (2d) 35, at page

38; Gudelj v. Gudelj, 41 Cal. (2d) 202, 259 Pac. (2d) 656, at page 660; Exley v. Exley, 101 Cal. App. (2d) 831, 226 Pac. (2d) 662; Lucachevitch v. Lucachevitch, 69 Cal. App. (2d) 478, 159 Pac. (2d) 688 at page 692; Moon v. Moon, 62 Cal. App. (2d) 185, 144 Pac. (2d) 596, at page 598.

There is no permanent finality to custodial award of minor children. Stout v. Pate, 1953, 120 Cal. App. (2d) 699, 261 Pac. (2d) 788; Sampsell v. Superior Court of Los Angeles County, 32 Cal. (2d) 763, 197 Pac. (2d) 739; Ex parte Memmi, 1947, 80 Cal. App. (2d) 295, 181 Pac. (2d) 885; Horsley v. Horsley, 77 Cal. App. (2d) 442, 175 Pac. (2d) 580; Dotsch v. Grimes, 75 Cal. App. (2d) 418, 171 Pac. (2d) 506; Cooney v. Cooney, 25 Cal. (2d) 202, 153 Pac. (2d) 334.

The Superior Court of Los Angeles County, California, in the exercise of the jurisdiction so conferred upon it by section 138 of the California Civil Code, which jurisdiction the plaintiff mother invoked when she filed her complaint, awarded to her the custody of the two children but such award was in legal effect a conditional one. There was attached thereto the condition imposed by and implied from the California statute, section 138, supra, of which she was bound to take notice that the right in the Superior Court to vacate or modify the order and award at any time during the minority of the children was and is expressly reserved. As was said in Morrill v. Morrill, 83 Conn. 479, 77 A. 1, at page 5: "It scarcely lies in her mouth to now question its [the California Court's] authority, when invoked by her then husband, whom she summoned to its [the California Court's] jurisdiction, to exercise the authority thus reserved, although her voice is heard from without the confines of the state."

In Dolgoff v. Dolgoff, 81 Cal. App. (2d) 146, 183 Pac. (2d) 380, at page 382, it is said: "It has been decided by the great weight of authority that when a court has acquired jurisdiction of the parties to a divorce suit it retains ancillary jurisdiction to modify the decree of divorce by awarding to either spouse the custody or necessary maintenance of their minor

child, for its best interest, even though one of the spouses has acquired a residence with the child in another state. In re Kolb, 60 Cal. App. 198, 200, 212 Pac. 645, 646; Stephens v. Stephens, 53 Idaho 427, 24 Pac. (2d) 52, 55; [Hersey v. Hersey, 271 Mass. 545, 171 N. E. 815] 70 A. L. R. 526 and note."

"Where one puts in motion the process of a court or seeks to use the procedure of the court for the purpose of obtaining a benefit for himself, jurisdiction is conferred over him so far as the defendant in the proceeding or the court is concerned." Delco Ice Mfg. Co. v. Frick Co., 318 Pa. 337, 178 A. 135, 139. Compare: Allee v. Van Cleave, Tex. Civ. App. 1954, 263 S. W. (2d) 276; Application of Habeck, S. D. 1955, 69 N. W. (2d) 353; Chittick v. Chittick, Mass. 1955, 126 N. E. (2d) 495; Sherrer v. Sherrer, 334 U. S. 343, 68 S. Ct. 1087, 1097, 92 L. Ed. 1429; Coe v. Coe, 334 U. S. 378, 68 S. Ct. 1094, 92 L. Ed. 1451; Humphreys v. Smith, 81 Okl. 104, 197 Pac. 155; Keller v. Keller, 352 Mo. 877, 179 S. W. (2d) 728, at page 731; Christ v. Jovanoff, 84 Ind. App. 676, 151 N. E. 26, 152 N. E. 2.

*Jurisdiction of Subject Matter.* While the majority opinion concedes that the judgments entered in the divorce suit No. D258239 were subject to modification under Section 138 of the California Civil Code as they would be in Montana under Section 21-138 of the Revised Codes of Montana of 1947, the majority opinion herein says, "Yet to effect such a modification it is requisite that the parties be again brought before the court." The majority opinion further states that in November 1954 when the father's application for a modification was presented to the California court "the subject matter or res was at that time with these children at their domicil in Montana. The California Court was powerless therefore to act upon it."

The law fails to sustain such conclusions and holding.

In Maloney v. Maloney, 1947, 67 Cal. App. (2d) 278, 154 Pac. (2d) 426, 427, the court said:

"The question for decision is whether the superior court in an action for divorce filed by the husband may make an order

against him relative to the custody of the minor children, after he had departed from the state with the children. * * *

"Numerous decisions are reported in support of the proposition that where jurisdiction of the person or of the res has once attached it is not defeated by the removal of the person or of the res beyond the jurisdiction of the court. 15 Corpus Juris, page 824; 21 C. J. S., Courts, section 93. Jurisdiction once acquired is not defeated by subsequent events which might have prevented jurisdiction had they occurred before personal service of the action was made. Bigelow v. Washburn, 98 Wis. 553, 74 N. W. 362. * * Although the children are beyond the territorial limits of California, they are still under the jurisdiction of the court below (Hersey v. Hersey, 271 Mass. 545, 171 N. E. 815, 818, 70 A: L. R. 518), *which attached at the time the suit was filed.*

"The authorities cited by plaintiff in support of his appeal * * * *are not pertinent. In those cases, either no personal service was ever had upon the party against whom the appealed judgment had been entered, or the children involved were outside of the jurisdiction· of the court from a date prior to the commencement of the action. All of them are founded upon the inefficacy of substituted service of process as a means of obtaining a judgment in personam." Emphasis supplied.

In White v. Shalit, 136 Me. 65, 1 A. (2d) 765, 767, Chief Justice Dunn speaking for the court, concerning the authority and the reserved or continuing jurisdiction conferred by the Maine statute, which is similar to section 138 of the California Civil Code, said:

"And there may be, from time to time, concerning children, variance of the decree, 'as circumstances require'. Section 14. Stratton v. Stratton, 73 Me. 481, so recognizes.

"The language of the statute is comprehensive.

"Exercise of delegated power and discharge of conjoined duty are not restricted to any particular period within the minority of the children, nor is especial retention of this branch of the case, while proper practice, prerequisite to revising the

decree. *The statute preserves jurisdiction beyond the ability of the parties to exclude, or of the court to deprive itself.* [Citing cases.]

" 'That which is implied in the statute is as much a part of it as that which is expressed.' 59 C. J. 973. *The court retains seizin of the divorce suit.* [Citing case.] The decree is a conditional one; prerogative to enter and to vary it is devolved in the same terms. [Citing case.]

"*There can be no final judgment as to infant children, in a divorce case.* [Citing case.] *Minor children of divorced parents are wards of the court.* [Citing case.] Theirs are new legal statuses. Stetson v. Stetson, 80 Me. 483, 15 A. 60. *Taking a child out of the state does not preclude the court.* Hersey v. Hersey, 271 Mass. 545, 171 N. E. 815, 70 A. L. R. 518; Stetson v. Stetson, supra.

"* * * *But, the child is not removed from the jurisdiction of the court.* 'That has,' as Judge Danforth observes, 'already attached'. Stetson v. Stetson, supra." Emphasis supplied.

In State ex rel. Nipp v. District Court, 46 Mont. 425, 128 Pac. 590, 593, Ann. Cas. 1916B, 256, this court upheld and gave full faith and credit to a modification order entered by a Nebraska Court which had granted a decree of divorce. The modification order was made at a time when both the child and the parent having the legal custody thereof were in Montana. In that case Mr. Chief Justice Brantly, speaking for the court, said:

"Notwithstanding the removal, the Nebraska court retained its jurisdiction, and it was competent for it to so amend the decree that the mother could enforce the right thereby accorded to her. Morrill v. Morrill, 83 Conn. 479, 77 A. 1; Hammond v. Hammond, supra [90 Ga. 527, 16 S. E. 265]; Wakefield v. Ives, supra [35 Iowa 238]; Stetson v. Stetson, supra [80 Me. 483, 15 A. 60]; Bailey v. Schrader, 34 Ind. 260; State v. Rhoades, 29 Wash. 61, 69 Pac. 389. And, as has already been said, in the absence of a showing of circumstances occurring since the amendment requiring the court of this state, in the

interest of the son, to order otherwise, this part of the decree is to be enforced together with its other provisions; the effect to be given the record in this state being the same as that which is given to it in the state from which it came. Rev. Codes, section 7919 [1907, now R. C. M. 1947, section 93-1001-25.]''

In Talbot v. Talbot, 120 Mont. 167, 181 Pac. (2d) 148, 151, this court affirmed a Montana district court in giving full faith and credit to a decree of a Washington Court given in an action for divorce which awarded to the mother the custody of a minor child who was at the time the decree was entered and the award given, absent from the State of Washington. There the court said:

''The rule is not inflexible that the court will never award the custody of a child who at the time of the adjudication is physically without the jurisdiction of the court. Wear v. Wear, 130 Kan. 205, 285 Pac. 606, 72 A. L. R. 425; Hughes v. Hughes, 180 Or. 575, 178 Pac. (2d) 170; State v. Rhoades, 29 Wash. 61, 69 Pac. 389; Stephens v. Stephens, 53 Idaho 427, 24 Pac. (2d) 52; Maloney v. Maloney, 67 Cal. App. (2d) 278, 154 Pac. (2d) 426; Anderson v. Anderson, 74 W. Va. 124, 81 S. E. 706; and see 27 C. J. S., Divorce, section 303, page 1164.''

In Krasnow v. Krasnow, 1953, 140 Conn. 254, 99 A. (2d) 104, at page 106, it is said:

''The plaintiff's first contention is that the court was without jurisdiction to make any award of custody because the child was not a resident of, or domiciled in, this state at the time the divorce action was begun or the judgment entered. * * * The defendant having submitted to the jurisdiction of the court, the whole matter of the marital status of the parties and the effect of any change therein upon minor children was before the court. Fagan v. Fagan, 131 Conn. 688, 690, 42 A. (2d) 41; Maloney v. Maloney, 67 Cal. App. (2d) 278, 280, 154 Pac. (2d) 426; Stephens v. Stephens, 53 Idaho 427, 437, 24 Pac. (2d) 52; Talbot v. Talbot, 120 Mont. 167, 173, 181 Pac. (2d) 148; Wilson v. Wilson, 66 Nev. 405, 212 Pac. (2d) 1066, 1072; Anderson v. Anderson, 74 W. Va. 124, 126, 81 S. E. 706. * * * Furthermore,

one such as this plaintiff, who has invoked the jurisdiction of the court in order to secure a divorce and the custody of a minor child, cannot thereafter assail it. Morrill v. Morrill, 83 Conn. 479, 489, 77 A. 1; Blair v. Blair, 48 Ariz. 501, 507, 62 Pac. (2d) 1321; 3 Freeman, Judgments (5th Ed.), section 1438; 27 C. J. S., Divorce, section 171, page 815.'' Also see; Burns v. Shapley, 16 Ala. App. 297, 77 So. 447; Ex parte Mullins, 26 Wash. (2d) 419, 174 Pac. (2d) 790; Middleton v. Tozer, Mo. App. 1953, 259 S. W. (2d) 80, at pages 87, 88; Lane v. Lane, Mo. App. 1945, 186 S. W. (2d) 47, at page 50; Hughes v. Hughes, 1947, 180 Or. 575, 178 Pac. (2d) 170, at page 172; Levell v. Levell, 1948, 183 Or. 39, 190 Pac. (2d) 527, at page 530.

The Constitution of the United States has a provision which reads: ''Full Faith and Credit shall be given in each State to the public Acts, Records and judicial Proceedings of every other State.'' Article IV, section 1.

The issue before this court on the instant *original proceeding* is whether the judgment of the Superior Court of Los Angeles County, California, in its cause No. D258239 is here entitled to full faith and credit under Article IV, section 1 of the Constitution of the United States.

The Superior Court of Los Angeles County, California, acquired and had jurisdiction of both the subject matter and parties at the time it rendered and entered the interlocutory decree,—the final judgment and the order of modification in its cause No. D258239. The adjudications are valid on their face and this court should give full faith and credit thereto. See Allee v. Van Cleave, supra; Application of Habeck, supra; Sherrer v. Sherrer, supra; Coe v. Coe, supra, and Chittick v. Chittick, supra.

MR. JUSTICE BOTTOMLY:

I concur in Mr. Chief Justice Adair's above opinion.